Vernon S. JULSON, Plaintiff and Respondent,

v.

LOYAL ORDER OF MOOSE NUMBER 822, A. R. Mitchell, Joseph Sys, Edward Senger, and Stanley Laughridge, Defendants and Appellants.

No. 8195.

Supreme Court of North Dakota.

Jan. 25, 1966.

Rehearing Denied Feb. 21, 1966.

Palda, Palda, Peterson & Anderson, Minot, for appellants.

William R. Mills, Bismarck, for respondent.

ERICKSTAD, Judge (on reassignment).

In this case the defendants, Loyal Order of Moose No. 822, A. R. Mitchell, Joseph Sys, Edward W. Senger, and Stanley Laughridge, the latter named individuals alleged to be the agents of the first named fraternal organization, appeal from the judgment entered against them August 26, 1963, in Ward County District Court, awarding the plaintiff, Vernon S. Julson $7,000 plus costs. The said defendants also appeal from the order dated August 28, 1963, denying the defendants' motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which was served on the defendants September 18, 1963. The judgment was based on a jury verdict of $7,000.

In his complaint Mr. Julson alleged that while he was present on the premises of the Moose Lodge in Minot on May 19, 1962, the defendants Mitchell, Sys, Senger, and Laughridge, while acting as agents for the Moose Lodge, without just cause jointly and severally assaulted, beat, maimed, and abused him. Injuries were alleged as follows:

That as a direct and proximate result of the aforementioned attack, the plaintiff suffered fracture and dislocation of the entire left malar bone, the repair of which fracture required an open reduction through the oral cavity and the plaintiff is suffering from a residual anesthesia of the face because of said injury to the left infra orbital nerve and that the plaintiff suffered cuts, bruises and contusions including a large hematoma of the left eye and lateral wall of the left maxillary sinus which was caved in by the displaced malar bone.

Mr. Julson further alleged that as a direct and proximate result of the aforementioned injuries he was required to be hospitalized and that he incurred and will incur hospital and medical expenses in excess of $2,500; that as a result of the injuries he became unable to work for a period of one month; and that as the assault was committed upon him by the defendants in the presence of numerous people in a manner and to a degree to hold him up to public disgrace and ridicule, he suffered damage and ruin to his reputation.

The defendants generally denied every allegation of the complaint and alleged that Mr. Julson violently and viciously made an assault against and upon the bodies and persons of some of the defendants on or about May 19, 1962.

At the close of Mr. Julson's case the defendants moved for an order dismissing his cause of action against each of the individual defendants as well as the fraternal organization. This motion was denied. The defendants again renewed their motion for dismissal after all of the evidence had been submitted and both parties had rested. This motion was also denied. Both motions were based on the contention that the plaintiff had "failed to prove his cause of action and to carry the burden of proof as against the defendants."

Before submitting the case to the jury the trial court presented the instructions in writing to the respective counsel and asked that exceptions be made. Counsel for both the plaintiff and the defendants stated that they had no exceptions to the instructions. The instructions are therefore the law of the case. See Rule 51(c), N.D.R. Civ.P., which provides that under these circumstances only those parts of the instruc-

tions designated as objectable by counsel shall be considered excepted to.

After the rendition of the verdict by the jury the defendants moved for a judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied. This appeal is from the judgment based on the verdict and from the order denying the motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.

The appellants assert nine assignments of error, but as assignments of error which are not argued in the brief are deemed abandoned, we shall consider only those assignments which were argued in the brief. Rule 8(B) of the Supreme Court of North Dakota, 76 N.D. xix; Regent Coop. Equity Exch. v. Johnston's Fuel Liners, 122 N.W.2d 151 (N.D.1963); Mevorah v. Goodman, 68 N.W.2d 469 (N.D.1955).

In an appeal from a judgment based upon a verdict and from an order denying a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, if the evidence is conflicting, it must be viewed in the light most favorable to the verdict. Quam v. Wengert, 86 N.W.2d 741 (N.D.1957); Dahl v. North American Creameries, 61 N.W.2d 916 (N.D.1953). Our first responsibility in this case is to view the evidence in that light.

Viewing the evidence in the light most favorable to the verdict, we believe that the jury could reasonably have found the facts to be as follows:

Mr. Julson on May 19, 1962, was employed by White's Creamery as a deliveryman. He finished work that day about 6:00 p. m. and went to the Corner Bar, north of the creamery, where he had two or three glasses of beer. He stayed at the Corner Bar for approximately 30 to 45 minutes and then went to Eddie Burkhardsmeier's, where he had another glass of beer.

On leaving Burkhardsmeier's about 8:00 p. m. he drove Sam Williams to his home on Valley Street and then drove to the Keyes Club, which was apparently on his way home. There he met his friend Burton Grafsgaard, who at the time of their meeting had consumed one or two beers. Mr. Julson and Mr. Grafsgaard spent about an hour and forty-five minutes together at the Keyes Club, during which time they drank one or two or three beers.

They left the Keyes Club about 10:00 p. m. and drove either to Mr. Grafsgaard's home or to Mr. Julson's home (they apparently went to both places) and, on discovering that their wives were not at home, they drove to Surrey. Not finding the car that their wives were using, they returned to Mr. Julson's home about 11:00 p. m. or later.

Mr. Julson's oldest son was baby-sitting the Grafsgaard children, and, because the older Grafsgaard child wanted to go with his father, they took him and the three of them drove in Mr. Julson's panel truck directly to the Moose Lodge.

Mr. Grafsgaard and his son stayed in the panel truck while Mr. Julson went into the lodge building to look for the wives. While he was inside, the wives arrived, took the child, and told Mr. Grafsgaard that they were going home. Mr. Grafsgaard then went into the clubrooms to inform Mr. Julson that their wives had gone home. He had no difficulty in gaining admission to the club, although he was not a member.

Inside the club he bought a bottle of beer in the front bar and then took it into the auditorium, where a dance was in progress. Near the stage where the orchestra was seated he saw Mr. Julson. He joined Mr. Julson, and the two of them shared his bottle of beer.

Previous to Mr. Grafsgaard's appearance, Mr. Julson had consumed a drink purchased for him in the back bar by Tony Flemming, an officer of the club.

Mr. Julson talked with one of the men in the orchestra and with other persons who danced by, but he denied that he used pro-

fane or obscene language in the presence of or directed toward the dancers or others.

While Mr. Julson and Mr. Grafsgaard were sitting on the lower elevation of the stage, sharing the bottle of beer, the defendant Mitchell walked over to Mr. Julson, grabbed his arm, and said: "Vern, you know you can't be in here with clothes like that on." (Mr. Julson was wearing his creamery uniform, which consisted of a blue shirt and matching pants, without lettering, and Mr. Grafsgaard was dressed in work pants similar to army sun-tans and a sport shirt. They were the clothes which the men had worn at work that day.)

According to the testimony of Mr. Chester A. Kocher, an officer of the lodge, the lodge had a house rule that members coming into the lodge must be clean, presentable, and respectably dressed.

Mr. Julson assumed that Mr. Mitchell was kidding and kidded and grinned back at him, but Mr. Mitchell grabbed him again, and when this occurred, Mr. Julson stood up and "swished his arm off of" his. In the next few moments the defendants Mitchell, Senger, and Sys had hold of him at different times, so that both of his arms were restrained, and while both of his arms were held, some person hit him in the stomach so that he lost his breath and did not regain it until he had been ushered to the door of the entrance to the club. At that time defendant Laughridge hit him on the left side of his face so hard that he was knocked through the open doorway across the sidewalk, against a car which was parked there, causing him to fall to the ground unconscious.

Thereafter Mr. Grafsgaard drove him directly home in the panel truck and did not drive away from the Julson home until he had seen Mr. Julson enter it.

Mrs. Julson heard her husband enter the house and went to the entryway, where she found him lying on the floor. This was about 11:45 p. m.

Mr. Julson went to bed, and about 1:30 awakened his wife because of the pain he was suffering. She gave him two Anacin tablets and went back to bed.

About 8:00 a. m. Mr. Julson informed his wife that he had been spitting blood, and she called Dr. Roger Sorenson, who told her to bring her husband to the hospital. She did so, and he was examined by Dr. Sorenson, whose findings were that Mr. Julson had a hemorrhage of the conjunctiva of the tissues surrounding the left eye (it was the doctor's impression that the left eye protruded abnormally) and that he had a possible fracture of the left maxillary bone. Dr. Sorenson called in a specialist, Dr. Samuel E. Shea, who examined the x-rays which Dr. Sorenson had ordered and later performed surgery by cutting into the side of Mr. Julson's mouth from the inside and reducing or setting the fractured left malar bone. Mr. Julson remained in the hospital for three days.

Thereafter he returned to work, but because he was required to enter the creamery coolers and his face became numb on doing so, he was caused to quit that work as regular employment.

In addition to the surgery in May, 1962, Mr. Julson had treatment in May, 1963, which consisted of puncturing the left maxillary sinus and irrigating it, and it was this sinus which was affected by the blow to his left malar bone. Pain resulting from this treatment necessitated a second hospitalization of two days.

At the time of the trial, more than a year after the injury, he still suffered from a feeling which he described as being "numb, be just like you break your arm, I suppose, pins and needles sticking you in the whole side of the face."

The medical and hospital bills incurred totaled $476.40.

The defendants Mitchell and Sys were officers of the Moose Lodge and part of the board of management, and it was

customary for lodge officers, especially those on the board of management, to assist those who were on duty at the club. The defendant Senger was employed as a bartender at the club. The defendant Laughridge became involved because he was asked by his friend Mr. Chester A. Kocher, who was present and was an officer in the lodge, to help close the doors in connection with removing Mr. Julson from the lodge. (Mr. Laughridge so testified, but Mr. Kocher testified that he made no such request of Mr. Laughridge.)

The court defined assault and battery as follows:

> * * * [A]n assault is defined as any wilful and unlawful attempt or offer, with force or violence, to do a corporal hurt to another. A battery is any wilful and unlawful use of force or violence upon the person of another.

Having determined the evidence when considered in the light most favorable to the verdict to be as herein stated, it is quite clear that the individual defendants, Mitchell, Sys, Senger, and Laughridge, while acting in concert as agents for the Moose Lodge, assaulted and battered Mr. Julson, causing him serious injuries (part of which were of a prolonged duration), pain and suffering, embarrassment, medical and hospital expenses, and some curtailment of job opportunities due to resulting tenderness to cold.

As for the defendant Laughridge's contention that he acted in self-defense, we note that the evidence surrounding his participation in removing Mr. Julson from the premises is very much in conflict. He says he was outside the building with his back to the wall, faced by the onrushing Julson and Grafsgaard, when he first admonished them to stop and then struck out at Julson after Julson first struck at him and that he used only a straight jab; whereas Julson's and Grafsgaard's testimony was to the effect that Laughridge hit Julson while Julson was in the entrance, without warning and without provocation, and that

he hit him so hard he knocked him out of the building, across the sidewalk against a car, causing Julson to fall on the ground unconscious.

The evidence being in conflict, it was proper for the court to refer this question of fact to the jury.

The court's instructions on self-defense were not excepted to. They read as follows:

> A person may use reasonable force against the person of another to repel an assault and battery upon himself. In other words, this is known as self defense. The force or violence used in self defense should not be more than sufficient to prevent the assault upon himself.

> I instruct you that in order to constitute assault and battery the act of force or violence used must not only have been committed wilfully, but it must also be done unlawfully. Now if the act of force or violence done is justified, then the act cannot be unlawful and cannot constitute an assault and battery; and if you in this case find that the acts complained of as having been committed by Defendants were justified then the same would not be unlawful and you should find a verdict for the Defendants.

> When a defendant admits that he used force against the person of the plaintiff with his hands, the burden is upon such defendant to prove by a fair preponderance of the evidence that such act is justified and done so in his necessary self defense; and, if he has done so, the plaintiff would not be entitled to recover. If he fails to do so, the plaintiff will be entitled to recover for such injury and damage as he sustained, if any.

> If the plaintiff was in the first instance the aggressor and made an assault upon a defendant, the defend-

ant so assaulted would have the right to use such force in resisting such assault and protecting himself against harm and injury therefrom as appeared to him at the time, acting in good faith, to be reasonably necessary, and in such case the defendant would not be liable for any injury resulting to the plaintiff from the force used by the defendant in such resistance.

On the other hand, I instruct you that a person, in repelling an assault, has no right to use greater force than under the circumstances he believes to be reasonably necessary for self-protection, and if he does he will be liable for the excessive force used; and if you find from a fair preponderance of the evidence,. that a defendant did, at the time of repelling of the assault alleged to have been made upon him by plaintiff, use greater force than under the circumstances he believed to be reasonably necessary for his self-protection, then the defendant would be liable to plaintiff for such injury and damage as he sustained thereby if any.

■■ Factors to consider in determining whether a person acted in self-defense and is thereby exempt from liability for injuries caused to another are the reasonableness of his belief in danger and the reasonableness of his belief of the need for the amount or degree of force used. The evidence considered in the light most favorable to the verdict supports the conclusion of the jury inherent in its verdict that either Mr. Laughridge did not reasonably believe danger existed or that he did not reasonably believe that the amount or degree of force he used was necessary, or both. See 6 Am.Jur.2d Assault and Battery (1963), §§ 161 and 162.

The court was cognizant of the club's need for reasonable rules and the exercise of reason in the enforcement of such rules. His instructions in this regard read as follows:

I charge you that a fraternal corporation, such as the Moose Lodge Number 822, has a right to adopt reasonable rules and regulations pertaining to the conduct of its members, and it also has the right to adopt reasonable rules pertaining to the enforcement of such rules of conduct.

However, I charge you that in enforcing the rules of conduct, such rules of enforcement must not only be reasonable but must also not be violation of the laws of the state and the instructions I have previously given you as to the rules of law pertaining to assault and battery which are applicable to the enforcement of the rules of a fraternal corporation.

The jury determined in the plaintiff's favor the issues of reasonableness of belief of danger and of reasonableness of belief of the amount or degree of force necessary to repel the danger. Viewing the evidence in the light most favorable to the verdict, we cannot say as a matter of law that the jury was in error.

■ Regarding the liability of the individuals and the liability of the lodge for their acts, the evidence considered in the light most favorable to the verdict shows that all four of the individual defendants helped in removing Mr. Julson and that in his removal and as the proximate cause of their efforts he was injured, and that two were acting as officers of the club, the third was acting as an employee in the performance of duty, and the fourth was acting at the request of an officer of the club. Thus, the individuals and the club were properly found liable.

■ A jury verdict will not be set aside as being the result of passion and prejudice of the jury unless it is shown that the verdict was actuated by passion and prejudice.

* * * [T]here is a presumption that the jury was composed of fair-minded persons and that the verdict ex-

pressed their honest judgment. This presumption disappears only where the verdict returned is so excessive as to shock the sense of justice of the court. In such case, the court will and should conclude that the jury was improperly influenced by either prejudice or passion. Carpenter v. Village of Dickey, 26 N.D. 176, 143 N.W. 964; Booren v. McWilliams, 34 N.D. 74, 157 N.W. 698.

Such motion for new trial on the ground that the verdict was excessive is addressed to the sound, judicial discretion of the trial court, and this court will not set aside the determination of the trial court in the absence of a clear showing that such discretion was abused. Emery v. Midwest Motor Express, Inc., 79 N.D. 27, 54 N.W.2d 817; Montana-Dakota Utilities Co. v. Culver (N.D.), 80 N.W.2d 541; Lake v. Neubauer (N.D.), 87 N.W.2d 888. Kern v. Art Schimkat Construction Co., 125 N.W.2d 149, at 153 (N.D.1963).

See also Helgeson v. Locken, 130 N.W.2d 573 (N.D.1964).

■ There is no showing here that the verdict was actuated by passion and prejudice. It is not excessive.

■ For the reasons stated herein the judgment for the plaintiff and the order denying the motion for judgment notwithstanding the verdict or, in the alternative, for a new trial are affirmed.

BURKE, C. J., TEIGEN, J., and DOUGLAS B. HEEN, District Judge, concur.

KNUDSON, J., not being a member of the Court at the time of submission of this case, did not participate.

STRUTZ, J., did not participate; Honorable DOUGLAS B. HEEN, Judge of the District Court, Second Judicial District, sitting in his stead.