Keith MINETTE and Rollin Metz,
Plaintiffs and Respondents,

v.

ASSOCIATED CHINCHILLA BREEDERS,
INC., Bruce Tibbals, and Janice Tib-
bals, Defendants and Appellants.

No. 8582.

Supreme Court of North Dakota.

Jan. 16, 1970.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for appellants.

Joseph P. Stevens, Minot, for respondents.

ERICKSTAD, Judge.

This appeal arises from a dispute over the meaning of a stipulation of settlement entered into between the same parties in another lawsuit.

Through his first amended complaint, dated October 8, 1965, Bruce Tibbals, as plaintiff, asserted six causes of action against Associated Chinchilla Breeders, Inc., Rollin Metz, and Keith Minette. The second cause of action alleged, among other things, that Associated Chinchilla Breeders, Inc., is a North Dakota corporation, with its principal office and place of business at Minot; that Mr. Tibbals is the owner of 400 shares of the capital stock of that corporation, having acquired the stock from the individual defendants, Metz and Minette, on or about February 3, 1964, the said stock being one-third of the outstanding shares; that Tibbals is a director of the corporation and that Metz and Minette are officers and directors of the corporation; that on or about February 1, 1965, Metz took $15,500 in principal face value of negotiable notes from the corporation without prior authorization of the board of directors or stockholders of the corporation and without the knowledge or consent of Tibbals; that on or about May 29, 1965, a shareholders' and directors' meeting purported to authorize distribution from the corporation to Metz, Minette, and Tibbals of $20,000 each in principal face value of negotiable notes owned by the corporation; that Tibbals voted no and protested this action; that on or about July 1, 1965, Minette withdrew $20,000 in negotiable promissory notes from the corporate defendant; that Tibbals has never received any equal distribution from the corporation but that on or about the time of the commencement of this action Minette, as president of the corporation, caused to be mailed to Tibbals by registered mail seventeen negotiable promissory notes of the approximate face value of $20,189, which Mr. Tibbals rejects and tenders return.

The third cause of action of the afore described complaint, as it is pertinent to this appeal, asserts that Metz and Minette engaged in numerous actions in the name of the corporation without formal authorization from the board of directors and without knowledge of Tibbals, in that, among other things, they acquired an airplane and traded it in on another airplane in the name of the corporation, and they purchased an equity in a building and land by exchange of corporate assets.

Judgment was later entered in that lawsuit upon a "stipulation of settlement," the pertinent parts of which read:

1. *Releases:* In consideration of this agreement, all claims and counterclaims between the parties are dismissed with prejudice and without costs to any party. Concurrently herewith, Minette and Metz generally release the corporation and Tibbals from all claims whatsoever, excepting therefrom only the corporation's and Tibbals' obligations hereunder; and Tibbals and the corporation generally release Minette and Metz from all liabilities whatsoever, except the obligations of Minette and Metz under this agreement.

2. *Purchase:* Minette and Metz do hereby sell and deliver to the corporation and the corporation does hereby purchase from them all of their stock in the corporation (800 shares of common stock) for the sum of Sixty Thousand ($60,000.00) Dollars.

3. *Manner of Payment:* The corporation shall pay Minette and Metz for their shares as follows:

a. On January 1, 1966, the sum of Twenty-five Thousand ($25,000.00) Dollars in cash;

b. On January 1, 1966, the corporation shall transfer and deliver to Minette the airplane now owned by the corporation and agrees to execute any and all documents necessary to complete the transfer;

c. The balance of Twenty-five Thousand ($25,000.00) Dollars, together with interest at the rate of five per cent (5%) per annum from January 1, 1966, shall be paid in monthly installments of One Thousand Four Hundred Thirty-three ($1,433.00) Dollars each commencing February 1, 1966, and on the first day of each month thereafter until fully paid;

d. By execution of this agreement, Bruce Tibbals, the sole remaining stockholder of the corporation, and his wife, Janice Tibbals, to secure the fulfillment by the corporation of its obligations to Minette and Metz under this agreement, agree to assure and guarantee Minette and Metz for the payments due from the corporation.

4. *Surrender and Pledge:* Concurrently with the execution hereof, Minette and Metz have delivered to the corporation stock certificate numbered six (6) for the eight hundred (800) shares of common stock of the corporation, being all of the stock owned by Minette and Metz, duly endorsed for transfer to the corporation, receipt of which is hereby acknowledged by the corporation.

5. *Representations of Sellers:* Sellers Minette and Metz represent and warrant that:

a. They are the sole owners of two-thirds (⅔rds) (800 shares) of the capital stock of the corporation free and clear of all encumbrances and they have the right to sell and transfer such stock;

b. That, since September 1, 1965, Minette and Metz together have not drawn out of the corporation over Eight Thousand ($8,000.00) Dollars, whether as compensation, bonuses, expenses, or otherwise without limitation; and that between February 15, 1964, and September 1, 1965, Minette and Metz have each individually drawn no more from the corporation than Bruce Tibbals, except Twenty Thousand ($20,000.00) Dollars face amount of negotiable notes as added compensation to Minette and Fifteen Thousand Five Hundred ($15,500.00) Dollars face amount of negotiable notes as added compensation to Metz;

c. That cash on hand and in the bank accounts of the corporation exceeds Seventeen Thousand ($17,000.00) Dollars (of which $9,000.00 is subject to garnishment in this action);

d. That the face amount of negotiable promissory notes on hand in the corporation exceeds One Hundred Fifty Thousand ($150,000.00) Dollars and that not over Thirty Thousand ($30,000.00) Dollars thereof is delinquent;

e. That there are no liabilities of the corporation other than in the usual course of business, except:

(1) The liability on the contract for purchase of building as shown by the balance sheet of August 31, 1965;

(2) A liability for unpaid unemployment compensation and F.I.C.A. taxes for the years 1963 and 1964 of approximately Four Thousand ($4,000.00) Dollars;

(3) Liabilities for 1965 unemployment compensation, F.I.C.A., and income taxes to the state and federal governments;

(4) A contingent liability not exceeding Seven Thousand ($7,000.00) Dollars for the 1964 Wisconsin trans-

action with Chinchilla Acceptance Corporation where certain notes were transferred with recourse.

f. That there have been no other changes in the business, except in the usual course of business, since the balance sheet of August 31, 1965.

6. *Agreement Not to Complete:* * * *

7. *Collateral Agreements:*

a. It is understood and agreed that Metz has due to him as additional compensation and salary for his past employment with the corporation Four Thousand Five Hundred ($4,500.00) Dollars in face amount of negotiable notes. These are to be selected by Bruce Tibbals and Metz by agreement and distributed to him within ten (10) days. If they are unable to agree on the selection and distribution, within the said ten (10) days, they shall be selected on his behalf by Attorney R. H. McGee. The corporation covenants to carry out its service obligations to the best of its ability on any such negotiable paper transferred to Metz, and other negotiable paper previously transferred by the corporation, and Bruce Tibbals personally covenants to cause the corporation to carry out such service obligations.

* * * * * *

Dated this 27th day of December, 1965.

By complaint dated May 19, 1966, Keith Minette and Rollin Metz initiated an action against Association Chinchilla Breeders, Inc., Bruce Tibbals, and Janice Tibbals, in which they alleged that the corporation had failed to make the payments required to be made by them by Paragraph 3 of the "stipulation of settlement" of December 27, 1965, in that only $136.14 was paid on the February 1 installment, only $105.63 was paid on the March 1 installment, and although $1,433.00 was paid on April 1, only $172.88 was paid on May 1, 1966.

In their answer and counterclaim the corporation and the Tibbalses conceded that the payments were as asserted in the complaint, but in justifying their failure to fully pay the installments, they asserted numerous defenses.

The second, third, fourth, and fifth defense, and the counterclaim, except for Paragraphs III and VIII, which were dismissed, follow:

### SECOND DEFENSE

Defendants allege that the complaint fails to state a claim upon relief can be granted for any amount greater than $3884.35, in that the Plaintiffs are entitled to the receipt of only four (4) installments of $1433.00 through May 19, 1966, the date of the complaint, or a total of $5732.-00, according to the Stipulation of Settlement, and the Plaintiffs have admitted the receipt of $1847.65 in Paragraph I of the complaint.

### THIRD DEFENSE

The Plaintiffs have breached Paragraph 5d of the Stipulation of Settlement, wherein the Plaintiffs represented and warranted to the Defendants "That the face amount of negotiable promissory notes on hand in the corporation exceed One Hundred Fifty Thousand ($150,000.00) Dollars and that not over Thirty Thousand ($30,000.00) Dollars thereof is delinquent;". Plaintiffs have breached this warranty in that in excess of Forty-Four Thousand ($44,000.00) Dollars thereof was delinquent on the date of the execution of the Stipulation of Settlement.

### FOURTH DEFENSE

The Plaintiffs have breached Paragraph 6 of the Stipulation of Settlement, wherein the Plaintiffs agreed to refrain from carrying on any business similar to that of the Defendant, Associated Chinchilla Breeders, Inc., within the County of Ward of the State of North Dakota for a period of eighteen (18) months from January 1, 1966.

## FIFTH DEFENSE

The Plaintiffs have breached Paragraph 5 of the Stipulation of Settlement, wherein the Plaintiff represented and warranted to the Defendants "that there are no liabilities of the Corporation other than in the usual course of business" with stated exceptions, in that on the date of the execution of the Stipulation of Settlement the Corporation was contingently liable on negotiated promissory notes exceeding Sixty-seven Thousand Dollars ($67,000.00), which contingent liabilities were not within the stated exceptions.

## COUNTERCLAIM

### I.

On May 4, 1966, the Defendant, Associated Chinchilla Breeders, Inc. paid to the Internal Revenue Service $1260.12 in payment of FICA taxes required by law to be paid by Keith Minette and Rollin Metz as employees of Associated Chinchilla Breeders, Inc. for the years 1963, 1964, and 1965, as follows:

|  | | Minnette | Metz |
|---|---|---|---|
| 1963 | Tax | $174.00 | $174.00 |
|  | Penalty and Interest | 67.99 | 67.99 |
| 1964 | Tax | 174.00 | 174.00 |
|  | Penalty and Interest | 35.71 | 35.71 |
| 1965 | Tax | 174.00 | 174.00 |
|  | Penalty and Interest | 4.36 | 4.36 |
|  |  | $630.06 | $630.06 |

The Plaintiffs are indebted to the Defendant, Associated Chinchilla Breeders, Inc. for these amounts, since the Plaintiffs warranted that there were no liabilities of the corporation, except certain specified liabilities that do not include these liabilities of the Plaintiffs.

### II.

On February 23, 1966, the Defendant, Associated Chinchilla Breeders, Inc. paid to the Internal Revenue Service $652.37 for income taxes, plus penalty and interest, for the year 1963. Accounting, legal, and other expenses incurred by Defendant Associated Chinchilla Breeders, Inc. in verifying this tax debt was $150.00. The Plaintiffs are indebted to the Defendant Associated Chinchilla Breeders, Inc. for the sum of these amounts, $802.37, since the Plaintiffs warranted that there were no liabilities of the corporation except certain specified liabilities that do not include these liabilities for the Plaintiffs.

\*  \*  \*  \*  \*  \*

### IV.

The Plaintiff Keith Minette is indebted to the Defendant Associated Chinchilla Breeders, Inc. for the unearned premiums after January 1, 1966, the date of the Stipulation of Settlement, on an airplane liability policy, in the amount of $522.85 and on a life insurance policy, in the amount of $125.58, which policies said Plaintiff caused to be transferred from the ownership of said Defendant to his ownership in violation of the Stipulation of Settlement.

### V.

The Plaintiffs have breached Paragraph 5d of the Stipulation of Settlement, wherein the Plaintiffs represented and warranted to the Defendants "That the face amount of negotiable promissory notes on hand in the corporation exceed One Hundred Fifty Thousand ($150,000.00) Dollars and that not over Thirty Thousand ($30,000.00) Dollars thereof is delinquent;". Plaintiffs have breached this warranty in that

in excess of Forty-Four Thousand ($44,-000.00) Dollars thereof was delinquent on the date of the execution of the Stipulation of Settlement.

## VI.

The Plaintiffs have breached Paragraph 6 of the Stipulation of Settlement, wherein the Plaintiffs agreed to refrain from carrying on any business similar to that of the Defendant, Associated Chinchilla Breeders, Inc., within the County of Ward of the State of North Dakota for a period of eighteen (18) months from January 1, 1966.

## VII.

Plaintiffs by and through their controlled corporation, Associated Chinchilla Breeders, Ltd., a Canadian Corporation, are doing business in the established trade area of the Defendant, Associated Chinchilla Breeders, in unfair competition with said Defendant, causing confusion to the public and injury to the business of said Defendant.

\*     \*     \*     \*     \*     \*

## IX.

Defendant, Associated Chinchilla Breeders, Inc., is contingently liable as the named payee of a number of promissory notes to Bernard Hanson, the present holder of the notes, which notes were negotiated by Associated Chinchilla Breeders, Inc., when it was owned and controlled by the Plaintiffs to the Plaintiffs, and subsequently endorsed by the Plaintiffs to Bernard Hanson. As between said Defendant and the Plaintiffs, said notes are the obligation of the Plaintiffs. The notes herein referred to are more specifically described as follows to-wit: Two (2) notes executed by Clyde Campbell for $730.00 each, one note by Margaret Hackerott and Richard Pippal for $780.00, and one note by Guris Borstad for $900.00.

## X.

The Plaintiffs have breached Paragraph 5 of the Stipulation of Settlement, wherein the Plaintiff represented and warranted to the Defendants "that there are no liabilities of the Corporation other than in the usual course of business" with stated exceptions, in that on the date of the execution of the Stipulation of Settlement the Corporation was contingently liable on negotiated promissory notes exceeding Sixty-seven Thousand Dollars ($67,000), which contingent liabilities were not within the stated exceptions.

This case was first heard before the District Court of Ward County on January 25 and 26, 1967, and then recessed until March 31, 1967. On July 20, 1967, the court issued its memorandum opinion, and on August 10, 1967, its findings of fact, conclusions of law, and order for judgment.

In its findings of fact the court found that the "stipulation of settlement" had been complied with by the plaintiffs, Minette and Metz, (1) except as to the $1,-260.12 in F.I.C.A. taxes, which were paid by the corporation and should have been paid by the plaintiffs; (2) except for the $652.37 in income taxes for the year 1963, which were paid by the corporation and should have been paid by the plaintiffs; and (3) except for the $150.00 incurred in costs and expenses in verifying the income taxes due, which the court assessed the plaintiffs. The court specifically found that at the time of the signing of the stipulation there were on hand promissory notes in the corporation exceeding $150,000, and that not over $30,000 of those notes were delinquent. It also found that there were no contingent liabilities other than those excepted in the stipulation, except for those which arose in the usual course of business. In other words, the court found that the notes which had been received by the corporation for the sale of chinchillas and equipment and then assigned by the corporation without recourse for real and

personal property, were liabilities which arose in the usual course of business.

The court found the evidence insufficient to establish that the plaintiffs had done business in Ward County in violation of Paragraph 6 of the stipulation and in conclusion found the plaintiffs were entitled to the sum of $18,241.40 and that the installments which were to have fallen due on May 1, June 1, and July 1 following the date of the trial were an obligation still remaining and bearing interest at five per cent per annum.

Judgment was entered upon the said findings of fact, conclusions of law, and order for judgment on August 11, 1967, and it is from that judgment that the corporation and Mr. and Mrs. Tibbals now appeal and demand a trial de novo.

Notwithstanding that the corporation and the Tibbalses have demanded a trial de novo, they have seemingly conceded in their briefs and in oral argument that there are basically only three issues to be decided on this appeal.

The first issue is whether Keith Minette is liable to the Tibbalses for $644.78, the value of the unearned premiums of the insurance policies transferred to him.

The second issue is whether the defendants are entitled to an offset against the plaintiffs' claim in the amount of $12,007.73, which is the difference between the amount of the contracts that were delinquent, as distinguished from the notes that were delinquent.

The third issue is whether the plaintiffs are liable to the defendants on the notes negotiated without recourse.

As to the first issue, we concur with the trial court in its conclusion denying the defendants any recovery for unearned insurance premiums. We find nothing in the stipulation specifically concerning the unearned insurance premiums, but we are of the opinion that when the Tibbalses became the owners of all of the stock of the corporation, it was within their power to act through the corporation to terminate the insurance coverages and obtain a refund of unearned premiums if such refunds were permissible under the contracts of insurance. As to the life insurance policy, we note that Mr. Minette testified that it was assigned to him as owner and his wife was made the beneficiary as a result of authorization signed by Mrs. Tibbals as secretary-treasurer of the corporation. He further testified that Mr. Hall, the agent for the life insurance policy with Western States Life Insurance Company, informed him that because the policy was a term policy, there could be no refund in premiums; that Mr. Hall had so informed Mrs. Tibbals; and that as a result of that information, she acted on behalf of the corporation in assigning the policy.

■ As for the unearned premium on the airplane policy, Mr. Ralph Winn testified that Mr. Minette and Mr. Metz asked him, on or about December 30, 1965, to prepare an endorsement to the policy making Mr. Minette the insured party, effective January 3, 1966, and that this was done. He conceded on cross-examination that had the policy been cancelled effective January 3, the estimated return premium would have been $519.78, but he said that to have accomplished that cancellation, it would have been necessary for the named insured (the corporation) to have turned in the original policy or to have signed a lost policy release; and that, although subsequent to January 3, 1966, he informed the Tibbalses by telephone and by letter that this would be necessary to obtain a refund, the Tibbalses never did comply with his request. It appears to us that the proper remedy would have been for the Tibbalses, through the corporation, to have made a timely and proper demand upon the insurance company for a cancellation of the policy and a refund of the unearned premiums on the airplane policy; and that, having failed to do so, they cannot now, in an action in which the insurance company is not a party, obtain

from Minette the equivalent of such a refund by deducting from the payments required under the stipulation.

The second issue involves the meaning of subparagraph d of paragraph 5 of the stipulation, which reads:

That the face amount of negotiable promissory notes on hand in the corporation exceeds One Hundred Fifty Thousand ($150,000.00) Dollars and that not over Thirty Thousand ($30,000.00) Dollars thereof is delinquent;

■ It is apparently the contention of the Tibbalses that since the notes that were referred to in subparagraph d of paragraph 5 of the stipulation were given in payment of conditional sales contracts (which conditional sales contracts contained an acceleration clause giving the corporation the option of declaring the entire contract due whenever there was a default in any of the installment payments), all notes given to pay installment payments on a contract were thus made delinquent whenever any note was delinquent, notwithstanding that the corporation had not exercised its option and commenced an action on the contract.

We cannot agree with this contention, for in this instance the stipulation refers to *notes, not contracts.* There is no indication in the record that actions had been commenced by the corporation on any of the conditional sales contracts in which payments were in default. Accordingly, the record does not disclose more than $30,000 in delinquent notes as of the date of the stipulation, and we therefore concur in the trial court's conclusion that the defendants are entitled to no setoff for reasons related to subparagraph d of paragraph 5 of the stipulation.

The facts pertinent to the third issue are set forth in a stipulation dated April 21, 1967, and included in the appellants' brief as Appendix B. It reads:

STIPULATION

IT IS STIPULATED between the parties by and through their attorneys that Associated Chinchilla Breeders, Inc., at various times negotiated and assigned some of their promissory notes both with and without recourse, as follows:

1. During the month of June, 1963, to Keith Minette, an officer of the company, notes of the face value of approximately $4,000.00, were assigned without recourse, representing draws upon share of the profits of the company to become due to him.

2. Associated Chinchilla Breeders, Inc., discounted notes of approximate $4,400.00 face value by assignment without recourse, to Shoppers Charge Plan, Inc., for cash, between October 1963 and January 1964.

3. That in the acquisition of the building now owned by Associated Chinchilla Breeders, Inc., from which it now conducts its business, a down payment of $12,000.00 was made, part in cash. The balance of the down payment consisted of notes in the approximate face value of $6,380.00, assigned without recourse to Signal Realty, Inc., and notes of the face amount of $3,620.00 were assigned to Ray Olson, the owner of such building, without recourse. However, Ray Olson negotiated these notes to Chinchilla Acceptance Corporation, and in connection therewith, Associated Chinchilla Breeders, Inc., was required to guarantee payment.

4. That a plane was purchased from Hanson Furniture Company, of Williston, in October, 1964, and payment therefore was made by cash of approximately $4,000.00 and the balance in notes of the approximate amount of $5,540.00, which were assigned without recourse.

5. That in December 1964, the plane mentioned above was traded for a different plane, and notes in the face amount

of $6,847.82 were assigned without recourse to Mid-State Aviation, Inc.

6. That in January, 1965, notes in the face amount of $15,500.00 were assigned without recourse to Rollin Metz, as part of his profit share in the business.

7. That in July 1965, notes of the face value of $20,000.00 were assigned without recourse, to Keith Minette, as part of his profit share in the business.

[proposed paragraph 8 was apparently stricken by Jan M. Sebby, attorney for the defendants]

Dated at Minot, North Dakota, this 21st day of April, 1967.

> Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy

By s/ Jan M. Sebby
> Jan M. Sebby
> Attorneys for the defendants

> s/ Joseph P. Stevens
> Joseph P. Stevens
> Attorney for the plaintiffs

For the sake of accuracy and in light of the complexity of the contention of the Tibbalses relative to the third issue, we quote a part of their argument:

In paragraph 5e of the settlement agreement, dated December 27, 1965, Metz and Minette warranted "that there are no liabilities other than in the usual course of the business, except" certain enumerated liabilities. By obvious implication, the parties intended and understood that any of the excepted liabilities were not "in the usual course of the business," and that any liabilities of the same kind as those described in the exceptions, but not specifically excepted, are not to be considered liability "in the usual course of the business."

The trial court dismissed this argument and disallowed any setoff for the notes negotiated without recourse, holding that the negotiation of the notes without recourse, if productive of any liability, resulted in a liability "in the usual course of business," and thus that Metz and Minette did not warrant, under the stipulation of settlement, that the corporation had no contingent liabilities.

■ Not that the practice of negotiating notes without recourse as a substitute for money or credit is a commendable business practice, but in light of the extensiveness of the practice, as indicated by the stipulation dated April 21, 1967, and of the fact that the Tibbalses must surely have been cognizant of the practice (as Mr. Tibbals was a stockholder and director of the corporation during part or all of the time during which the notes were so negotiated and the business was so transacted), we cannot say that the trial court was in error in holding that the practice was in the usual course of this particular business.

■ If there is an ambiguity in the meaning of the phrase *no liabilities of the corporation other than in the usual course of business*—and there appears to be an ambiguity—we believe the responsibility for that ambiguity must fall upon the maker of the contract. The part of our statute on construction of contracts pertinent to this issue follows:

9–07–19. Uncertainty interpreted against party causing it—Presumption as to cause.—In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. * * *

North Dakota Century Code.

See: 501 DeMers, Inc. v. Fink, 148 N.W. 2d 820, 830 (N.D. 1967); Shimek v. Vogel, 105 N.W.2d 677, Syllabus 4 (N.D. 1960).

From the record, as we have been able to determine it, it appears that Mr. Meschke, of the Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy firm, represented the Tibbalses at the time of the first litigation and at the time of the negotiation for settlement of the first lawsuit, and that he prepared the stipulation of settlement now in dispute. Accordingly, the responsibility for the ambiguity falls on the Tibbalses, and the contract must then be construed in the light most favorable to Metz and Minette.

As Mr. Meschke has one view of the meaning of the stipulation of settlement, and Mr. McGee, as the attorney for the corporation at the time of the negotiations for the settlement, has another view of the meaning of the stipulation of settlement, we have found little help in the testimony of either in determining this issue, realizing that men of competence and integrity can and often do disagree as to the meaning of legal instruments and the significance to be given statements and circumstances surrounding the preparation of such instruments.

In addition to the rule of construction just cited in support of the trial court's conclusion on this issue, we believe that it is significant that any other construction of this part of the stipulation would mean that Metz and Minette sold a two-thirds interest in a corporation which owned over $150,000 in negotiable notes and other property for less than the amount of money it is now contended they are contingently liable for under the stipulation of settlement. We do not believe that such would be a reasonable construction of the contract or that the parties would have intended such a result.

In light of what has been said herein, we conclude by affirming the trial court's judgment in all respects.

TEIGEN, C. J., and STRUTZ, KNUDSON and PAULSON, JJ., concur.