**Randy ROBERTS, a/k/a Randall Roberts, Plaintiff and Appellee,**

**v.**

**HAIL UNLIMITED, A DIVISION OF INTERNATIONAL BUSINESS & MERCANTILE RE-ASSURANCE COMPANY, a corporation, Defendant and Appellant.**

**Civ. No. 10682.**

Supreme Court of North Dakota.

Nov. 28, 1984.

As Changed Dec. 4, 1984.

Thomas E. Merrick (argued), of Hjellum, Weiss, Nerison, Jukkala, Wright & Paulson, Jamestown, for defendant and appellant.

James R. Jungroth (argued), of Mackenzie, Jungroth, Mackenzie & Reisnour, Jamestown, for plaintiff and appellee.

GIERKE, Justice.

Hail Unlimited appeals from a judgment entered on a jury verdict with respect to the issue of damages.[1]

Randy Roberts, a/k/a Randall Roberts [Roberts], brought an action against Hail Unlimited, a division of International Business & Mercantile Re-Assurance Co., a corporation, claiming a breach of the hail insurance contract which he executed with Hail Unlimited on May 17, 1982. Roberts contends that Hail Unlimited never offered him, as the contract provided, the actual amount of hail loss that he suffered. Trial was had to a jury on February 14, 1984, and the jury determined, through a special verdict, that Roberts's hail loss amounted to $43,974.45. The district court then entered judgment against Hail Unlimited in the amount of $43,974.45, together with interest of $3,643.16 and costs of $173.00, for a total of $47,790.61. On March 5, 1984, the district court denied Hail Unlimited's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. Hail Unlimited filed a notice of appeal on April 16, 1984. We affirm.

Roberts, a Stutsman County grain farmer, purchased a crop hail insurance policy from Hail Unlimited. Through this policy, Roberts insured a total of nine fields of barley, durum, and wheat against hail damage in an amount not exceeding $150 per acre. Roberts claimed that Fields 1, 2, 3, 4,

1. Hail Unlimited did not appeal from the district court's order denying its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on the issue of damages. However, on appeal, Hail Unlimited raises issues which were argued on the motion before the district court: (1) that judgment notwithstanding the verdict is proper because the evidence compels one result; and (2) that a new trial is warranted because the evidence is insufficient and because the award of damages is excessive due to passion and prejudice of the jury.

The parties did not raise the question of whether or not the issues presented on the motion for judgment notwithstanding the verdict or for a new trial are reviewable on appeal from the judgment only.

We have determined on a previous occasion that such issues are reviewable on appeal notwithstanding the fact that a party appeals from the judgment alone. *Staiger v. Gaarder,* 258 N.W.2d 641, 643–644 (N.D.1977). Therefore, we will review the issues raised by appellant in the instant case.

5, 6, and 8 received hail damage as a result of a hail storm which occurred on the evening of June 13, 1982. Roberts claimed no loss on Field 7 or Field 9. The following is a breakdown of the type of crops and the number of acres on which Roberts received hail damage:

| FIELD | CROP | ACRES |
|---|---|---|
| 1. | Barley | 60 |
| 2. | Durum | 80 |
| 3. | Durum | 146 |
| 4. | Wheat | 65 |
| 5. | Wheat | 143 |
| 6. | Wheat | 142 |
| 8. | Durum | 94 |

On the morning after the hailstorm, Roberts and his mother went to his farm, located 20 miles southwest of Jamestown, to inspect his fields for hail damage. Roberts reported the loss to Ron Venjohn, an agent with Hail Unlimited. On June 15, 1982, Venjohn and two adjusters, Henry Schroeder and Dan Bachmeier, visited Roberts, looked briefly at the damaged fields, and took a count of the plants per ten-foot strip of crop on each field. The adjusters noted that they would be back in a couple of weeks to make a better determination of the actual loss. Roberts contends that an adjustment could have been made at that time.

On July 6, 1982, Schroeder and Venjohn visited the Roberts farm to estimate the loss on Field # 1, and concluded that the loss was 25 percent. No settlement was made at that time with respect to Field # 1.

Roberts requested another adjuster, and on July 15, 1982, Ken Becker was sent to the Roberts farm. Hail Unlimited instructed Becker to check the condition of Roberts's fields and come to some kind of settlement. Roberts and Becker discussed the percentage of loss on the barley crop, Field # 1. Becker determined that the wheat and durum were not mature enough to calculate a loss at that time, so he returned on August 9.

On August 9, Roberts settled with Becker for a 25 percent loss on Field # 1, the barley crop. The 25 percent loss was based on an estimated yield of 42 bushels per acre compared to Roberts's actual yield. On that same day, they discussed the losses on the durum and wheat crops on Fields 2, 3, 4, 5, 6, and 8. At trial, Becker testified that he and Roberts agreed to settle the wheat and durum loss after harvest, using the same method for computing the loss as Becker used for the barley crop. Becker testified that he called Roberts on September 9, 1982, at which time Roberts furnished him with his actual yields on the wheat and durum crops. On September 14, 1982, Roberts prepared and served a summons and complaint on Hail Unlimited. On September 25, Roberts met with Walt Streifel, company field supervisor, and Richard Palmer. At that time Roberts presented the calculations he had made as to the percentages of crop loss.

On September 28, three adjusters—Walt Streifel, Ted Lettenmaier, and Charles Luna—arrived at the Roberts farm to inspect the damaged wheat and durum fields. The fields were inspected and counts were made once again of the plants per ten-foot strip of crop. Roberts was given a Proof of Loss statement to sign. The Proof of Loss, prepared by Charles Luna, was based on a combination of several factors: plant stubble counts, kernel counts, and an estimated yield of 42 bushels per acre absent hail damage.

Roberts refused to sign the Proof of Loss statement, claiming that the amounts stated therein were inadequate. He proceeded with the suit against Hail Unlimited for what he contended was the actual loss and for breach of contract.

At trial, Roberts presented his calculations on the percentages of loss. Roberts arrived at the percentages of loss by comparing the plant count on each field with an average count of 249 plants per ten-foot strip on Field # 7, the field with no hail damage. For example, two plant counts which were taken on Field # 2 averaged 117 plants per ten-foot strip. That figure was divided by 249, the average count on Field # 7, and then subtracted from 100% for a loss of 53.3%. This percentage was multiplied times $150, the amount of insurance coverage per field, to arrive at $99.79

per acre loss. The per-acre loss figure was multiplied by the number of acres in Field # 2, which was 80, to reach a total loss of $6,396.00. Roberts's computations, which appear in his amended complaint, and which were testified to at trial, are, in pertinent part:

"2. S½NE¼ 19-138-65—80 acres Durum
53.3% loss × $150 = $79.95
loss per acre or $ 6,396.00

"3. NW¼ 17-138-65—146 acres Durum
60.8% loss × $150 = $91.20
loss per acre or $13,315.20

"4. SW¼ 17-138-65—65 acres Wheat
47.5% loss × $150 = $71.25
loss per acre or $ 4,631.25

"5. SW¼ 20-138-65—143 acres Wheat
55.4% loss × $150 = $83.10
loss per acre or $11,883.30

"6. SE¼ 20-138-65 142 acres Wheat
"41.1% loss × $150 = $61.65
loss per acre or $ 8,754.30

"8. NW¼ 20-138-65—94 acres Durum
58.1% loss × 150 = $87.15
loss per acre or $ 8,192.10

In addition to Roberts's testimony, the jury heard evidence from three area farmers as to their observation of Roberts's crops after the hailstorm and evidence concerning the average yields in the Stutsman County area and various factors which affect crop yields.

Hail Unlimited introduced testimony on how it calculated the amounts contained in the Proof of Loss statement. Hail Unlimited based its calculation on an estimated yield of 42 bushels per acre absent hail damage as compared to Roberts's actual yield, which figures also took into account the number of kernels in a head and the number of plants per ten-foot strip of crop.

The jury awarded Roberts $47,790.61, based on the following percentages of loss which are reflected in the judgment, which reads, in pertinent part:

| PARCEL # | PERCENTAGE | VALUE | ACRES | DOLLAR VALUE |
|---|---|---|---|---|
| 2 | 40 % | $150 | 80 | $ 4,800.00 |
| 3 | 40 | $150 | 146 | 8,760.00 |
| 4 | 39.1 | $150 | 65 | 3,812.25 |
| 5 | 55 | $150 | 143 | 11,797.50 |
| 6 | 37.4 | $150 | 142 | 7,966.20 |
| 8 | 48.5 | $150 | 94 | 6,838.50 |
| | | | | $ 43,974.45 |

Hail Unlimited brought a motion for judgment notwithstanding the verdict, or in the alternative, for a new trial. The motion was denied.

On appeal, Hail Unlimited challenges the propriety of the district court's denial of its motion for judgment notwithstanding the verdict or for a new trial. We recognize that the nature of appellant's appeal requires this court to utilize two separate standards of review. *See Nokota Feeds, Inc. v. State Bank of Lakota*, 210 N.W.2d 182, 187 (N.D.1973). The function of this court on review of a denial of a motion for judgment notwithstanding the verdict is to determine:

> "... whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, reasonable men could reach but one conclusion as to the verdict ...." *Nokota Feeds, Inc.,, supra* 210 N.W.2d at 187.

Therefore, if the evidence leads to one conclusion, and that conclusion was not reached by the jury, the granting of a judgment notwithstanding the verdict is proper.

The standard for reviewing a ruling on a motion for new trial is less rigorous than a ruling on a motion for judgment notwithstanding the verdict. 9 Wright & Miller, Federal Practice and Procedure

§ 2531. A motion for new trial is directed to the discretion of the trial court. *First Nat. Bank of Fargo v. Ketcham,* 336 N.W.2d 140, 144 (N.D.1983); Rule 59(b), N.D.R.Civ.P. The trial court's decision will not be reversed on appeal unless the court has exercised a manifest abuse of discretion. *Merrill Iron & Steel v. Minn-Dak Seeds, Ltd.,* 334 N.W.2d 652, 655 (N.D. 1983); *Kerzmann v. Rohweder,* 321 N.W.2d 84, 87 (N.D.1982); Rule 59(b), N.D. R.Civ.P.

## JUDGMENT NOTWITHSTANDING THE VERDICT

In applying the standard of review set forth above to the denial of appellant's motion for judgment notwithstanding the verdict, we cannot conclude that reasonable men could reach but one conclusion in the instant case. In reviewing the evidence presented at trial, we determine that the jury verdict could have varied widely. To say that there is only one possible conclusion as to the assessment of damages in this case would be a mistake. Therefore, we conclude that the district court committed no error in denying appellant's motion for judgment notwithstanding the verdict.

## NEW TRIAL

Appellant Hail Unlimited presents two grounds in support of its motion for a new trial:

1. Insufficient evidence to justify the verdict, Rule 59(b)(6), N.D.R.Civ.P., and
2. Excessive damages appearing to have been given under the influence of passion and prejudice on the jury, Rule 59(b)(5), N.D.R.Civ.P.

### *I. Sufficiency of the Evidence*

This court must, in determining the sufficiency of the evidence to support the jury's award of damages, view the evidence in a light most favorable to the verdict. *First Nat. Bank, supra; Kresel v. Giese,* 231 N.W.2d 780, 791 (N.D.1975); *Vaux v. Hamilton,* 103 N.W.2d 291, 294 (N.D.1960). As we indicated earlier, the denial of a motion for a new trial based on insufficiency of the evidence will not be disturbed on appeal unless an abuse of discretion is shown. *Wilson v. General Motors Corp.,* 311 N.W.2d 10, 14 (N.D. 1981); *Larson v. Unlimited Business Exch. of N.D.,* 330 N.W.2d 518, 521 (N.D. 1983). An abuse of discretion by a trial court in granting or denying a motion for new trial is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the court. *Wilson, supra* 311 N.W.2d at 14. "Our review is limited to consideration of whether there is substantial evidence to sustain the verdict ...." *Wilson, supra* 311 N.W.2d at 15.

At trial, the jury heard evidence from both parties on their assessment of the crop loss. Hail Unlimited produced one of its adjusters who testified that the calculations contained in the Proof of Loss statement were based on an estimated yield of 42 bushels per acre as compared to Roberts's actual yield. Hail Unlimited's computations also took into consideration a count of plants per ten-foot strip of crop and the number of kernels in each head of grain.

Hail Unlimited contends that its method of calculating the percentages of loss complies with the terms of the hail insurance policy which was issued to Roberts. Regardless of whether or not Hail Unlimited's calculations comply with the provisions of the policy, Roberts is entitled to an amount which represents his actual crop loss. At trial, Roberts presented his method of calculating the percentages of loss, which varied somewhat from Hail Unlimited's approach. Roberts compared the number of plants per ten-foot strip of crop in the hail-damaged fields to Field # 7, which averaged 249 plants per ten-foot strip.

Although the methods advocated by the parties produced different percentages of loss, we cannot say that the jury lacked information on how to compute the percentages. The percentages of loss assessed by the jury are within the parameters of the evidence produced at trial. The following

is a comparison of the respective percentages of loss calculated by Hail Unlimited, by Roberts, and by the jury:

| Parcel | Hail Unlimited | Roberts | Jury |
|---|---|---|---|
| 2 | 21.4% | 53.3% | 40 % |
| 3 | 21.4 | 60.8 | 40 |
| 4 | 21.4 | 47.5 | 39.1 |
| 5 | 30.9 | 55.4 | 55 |
| 6 | 21.4 | 41.1 | 37.4 |
| 8 | 33.3 | 58.1 | 48.5 |

The evidence produced at trial, when viewed in a light most favorable to the jury verdict, supports the award of damages in the instant case. *See Kresel v. Giese, supra.* We conclude that there was substantial evidence produced at trial to sustain the jury's verdict, and that the district court did not abuse its discretion in denying Hail Unlimited's motion for a new trial.

*II. Excessive Damages Due to Passion and Prejudice*

A motion for a new trial brought on the ground of excessive damages due to passion and prejudice of the jury is addressed to the sound discretion of the trial court. Rule 59(b)(5), N.D.R.Civ.P.; *Teegarden v. Dahl,* 138 N.W.2d 668, 688–689 (N.D.1965); 46 A.L.R.3d 708 (1972). The function of this court on appeal is to determine whether or not the trial court abused its discretion and whether or not that abuse has resulted in an injustice. *Skjonsby v. Ness,* 221 N.W.2d 70, 74 (N.D.1974).

Hail Unlimited contends that it:

> "was the victim of the passion of the jury. The jury saw the chance to gouge an insurance company, and did just that. There were several statements made that could have fueled the jury's prejudice."

Hail Unlimited refers to a statement made by Roberts indicating that Roberts asked an adjuster to look at his fields and the adjuster refused. Hail Unlimited also asserts that several of Roberts's complaints about the adjusters served to anger the jury and that testimony as to high crop yields influenced the jury in awarding a verdict in Roberts's favor.

This court has discussed the meaning of passion and prejudice and the resulting influence on a jury. *Skjonsby, supra* 221 N.W.2d at 76–77. We have stated that passion and prejudice, in order to justify the granting of a new trial, usually connote anger, resentment, hate, and disregard of the rights of others. *Skjonsby, supra.* In addition, a presumption exists that the jury consists of fair-minded persons and that the jury's verdict represents an honest judgment. *Julson v. Loyal Order of Moose Number 822,* 140 N.W.2d 39, 45–46 (N.D.1966). This presumption is overcome only when the jury's verdict is so excessive as to shock the conscience of the court. *Julson, supra.* The verdict in the instant case is not excessive. The percentages of loss computed by the jury were well within the range of figures testified to at trial by both Hail Unlimited and Roberts. Even if we determine that the verdict is excessive, as Hail Unlimited asserts, the verdict does not approach that level which shocks the conscience of the court. After reviewing the testimony at trial, we conclude that the record does not illustrate that passion and prejudice existed on the part of the jury.

For the reasons stated in this opinion, we affirm.

ERICKSTAD, C.J., and PEDERSON, VANDE WALLE and SAND, JJ., concur.