Adelaide HAGSTROM, Maxine Walker,
Henry Mayer and Donald Mayer,
Plaintiffs and Appellants,

v.

Erwin H. BRENDEL, Personal Representative of the Estate of John J. Mayer, deceased, and John A. Mayer, Defendants and Appellees.

Civ. No. 11327.

Supreme Court of North Dakota.

April 29, 1987.

Teevens, Johnson & Montgomery, Minot, for plaintiffs and appellants; argued by William P. Teevens. Appearance by Kent L. Johnson.

Brendel Law Offices, Mohall, for defendant and appellee Erwin H. Brendel; argued by John P. Brendel.

Olson, Sturdevant & Burns, Minot, for defendant and appellee John A. Mayer; argued by Michael G. Sturdevant. Appearance by Todd L. Cresap.

MESCHKE, Justice.

Four children of John J. Mayer, deceased, appeal from an order denying their post-trial motions to set aside a jury verdict and judgment which favored their father's estate and their brother, John A. Mayer. We conclude that evidence supported the special verdict that the real estate mortgage made by the decedent was "in the ordinary course of business" so that it was authorized under a property settlement agreement between the decedent and his children. We affirm.

Katherine Mayer and her husband, John J. Mayer, together owned seven quarter sections of farmland which were mortgaged to the Federal Land Bank. She died in April 1978, leaving her husband and six children: Adelaide Hagstrom, Maxine Walker, Henry Mayer, Donald Mayer, Jerome Mayer, and John A. Mayer. In September 1978, John J. conveyed two quarters to John A. Mayer, a son who had remained at home to farm with his father. The conveyance reserved a life estate to the father and was subject to two-sevenths of the mortgage to Federal Land Bank, saying "... grantee assumes 2/7ths which said portion he covenants to pay in accordance with the terms of said mortgage."

During administration of Katherine's estate, the form of her ownership of part of the farmland became the subject of a family dispute. To settle it, John J. and his children agreed that John J. would keep the remaining five quarters but would execute an irrevocable will to give the cash equivalent of a quarter to his son, John A., and to give those five quarters to the other five children in equal undivided shares. John J. agreed not to convey the five quarters during his life, but he had "the right" to mortgage them "in the ordinary course of business." The settlement agreement said nothing about the two quarters which John J. had partially transferred to John A., nor

did it deal with any other assets that John J. had or might acquire during his life.

Although John J. suffered a stroke in February 1980 that left him physically unable to work on the farm, he continued to manage it by making decisions about crop selection and financing. In October 1980, John J. refinanced at the Federal Land Bank, increasing the mortgage from $55,775 to $114,000. The new mortgage only described the five quarters retained by John J., omitting the two previously mortgaged quarters which he had partially transferred to John A. According to Federal Land Bank records, the new mortgage amount was for the old mortgage ($55,775), miscellaneous loan expenses ($7,225), operating expenses ($30,000), a building ($20,000), and a truck ($1,000).

John J. received cash loan proceeds of $51,000 which he deposited into his joint bank account with John A. on November 13, 1980. On the same day at the same bank, he bought a certificate of deposit in that amount for "John J. Mayer or John A. Mayer." Two years later, shortly after John J. died on November 1, 1982, the certificate of deposit was renewed in John A.'s name alone.

In April 1984, four children of John J. sued his estate and their brother, John A., claiming that the $114,000 mortgage was not made "in the ordinary course of business." At trial, the jury answered a special interrogatory, deciding that the mortgage was "given in the ordinary course of business." Judgment was entered for both the decedent's estate and John A., and the trial court denied motions for judgment notwithstanding the verdict and for a new trial.

On appeal, the complaining children argue that the evidence does not support the special verdict. They attack two different aspects of the mortgage: the increase of the mortgage liability by over $51,000 and the release of the two quarters from a proportionate share of the mortgage. Neither change can be "in the ordinary course of business," they say, stressing that:

"Upon J.J.'s death, Johnny is the recipient of the truck, certificate of deposit,

metal building and unencumbered property, while the other children now received five quarters of land encumbered by a $114,000.00 mortgage!"

They request that this court "remand the case for a new trial or find in [their] favor."

## I.

■ Whether the new mortgage was made "in the ordinary course of business" was a question of fact which was properly submitted to the jury. *See Minette v. Associated Chinchilla Breeders, Inc.*, 173 N.W.2d 485 (N.D.1970).

In reviewing a denial of a motion for judgment notwithstanding a verdict, we consider only whether reasonable persons could reach but one conclusion. We should not substitute our view of the evidence for the verdict of the jury unless it is erroneous beyond any debate. Where evidence supports a jury verdict, we uphold it. *Roberts v. Hail Unlimited, Div. of Intern. Bus.*, 358 N.W.2d 776, 779 (N.D.1984).

NDRCivP Rule 59(b)(6) authorizes a new trial for "causes materially affecting the substantial rights" of the party seeking the new trial, including "insufficiency of the evidence to justify the verdict."

■ A new trial is subject to the discretion of the trial court. Ordinarily, a decision denying a new trial will not be reversed on appeal unless it is a manifest abuse of discretion. *Roberts*, 358 N.W.2d at 780. "An unreasonable, arbitrary, or unconscionable attitude on the part of the court" is an abuse of discretion. *Id.* When we review denial of a new trial, we consider only "whether there is substantial evidence to sustain the verdict...." *Id.* (quoting *Wilson v. General Motors Corp.*, 311 N.W.2d 10, 15 (N.D.1981)).

## II.

The complaining children argue that since John J. used loan proceeds of $51,000 to purchase a certificate of deposit, instead of directly for intended purposes, the evidence did not support the special verdict that the mortgage was "in the ordinary course of business."

■ However, other evidence about use of the proceeds was before the jury. John J. had paid $16,000 for a storage building in 1979. He had bought a truck and other farming equipment in 1979, costing about $30,000. His cash reserves were low because of these recent expenditures and he was contemplating purchase of more farm equipment. There was testimony that farmers often held reserves for future operational needs in certificates of deposit and that John J. usually did so. Testimony indicated that John J. wanted cash in reserve for future operating expenses and equipment purchases. Thus, there were business reasons for the additional borrowing.

Viewing this evidence in the light most favorable to the verdict, as we must, we conclude that the jury could reasonably find that the increased borrowing was "in the ordinary course of business."

## III.

The children also argue that, because two quarters subject to the earlier mortgage were omitted from the new obligation, the evidence did not support the special verdict that the mortgage was "in the ordinary course of business." This part of their argument suggests that a mortgage cannot be "in the ordinary course of business" to the extent it was used to "pay off" an encumbrance upon land owned by someone else. But, this argument ignores several circumstances considered by the jury.

John J. still had a life estate in the two quarters omitted; it was not land "owned" by someone else. Also, as a life tenant, he did not have the sole power to execute a new mortgage on the two quarters.

Furthermore, the settlement agreement between John J. and his children said nothing about these two quarters. The express terms of the settlement agreement neither required John J. to continue the mortgage proportionately on all seven quarters, nor precluded him from discharging the two quarters from the then existing mortgage.

Thus, ambiguity about these two quarters in the settlement agreement made the issue a most appropriate one for the jury to decide. We conclude that the jury could reasonably find that the new mortgage was "in the ordinary course of business" for the five quarters which John J. had the "right" to mortgage.

Accordingly, the trial court did not err in refusing to grant a new trial for insufficiency of the evidence. We affirm the trial court's denial of the post-trial motions to set aside the jury verdict and the judgment.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.