**Evelyn HOLTE, Plaintiff and Appellee,**

v.

**CARL ALBERS, INC., Defendant, Third-Party Plaintiff and Appellant,**

v.

**Reuben HOLTE, Third-Party Defendant and Appellee.**

**Civ. No. 10737.**

Supreme Court of North Dakota.

June 27, 1985.

Pringle and Herigstad, Minot, for plaintiff and appellee; Donald A. Negaard (argued).

McGee, Hankla, Backes & Wheeler, Minot, for defendant, third-party plaintiff and appellant; Russel G. Robinson (argued).

McIntee & Whisenand, Williston, for third-party defendant and appellee; submitted on brief.

ERICKSTAD, Chief Justice.

A personal injury action was brought by Evelyn Holte on May 10, 1983, against Carl Albers, Inc. [Albers] for damages resulting from a cervical sprain and other soft tissue injuries she allegedly sustained on December 2, 1981, in a collision between a four-wheel-drive pickup truck driven by her husband, Reuben Holte, and a stationary cement block located in a parking lot owned by Albers. Albers, the defendant and

third-party plaintiff, appeals from a district court judgment entered April 9, 1984, and amended April 19, 1984, in which the court upon a jury verdict awarded Evelyn $61,-000 plus her costs and disbursements, and awarded the third-party defendant, Reuben Holte, his costs and disbursements. We affirm.

Our review of the trial transcript reveals the following facts: The collision out of which this suit has arisen occurred on an overcast day at approximately 11:30 a.m. It had snowed the previous night. Evelyn and Reuben were running errands that morning, which included a visit by Reuben to Albers' paint and glass store. Reuben parked the pickup in a parking lot located in the front of the store and a neighboring business. Upon his return from the store, Reuben backed the pickup out of the space it had occupied and proceeded to drive slowly forward through the parking lot in an effort to reach the street. In so doing, he drove over a cement block which extended approximately one foot in height from the surface of the parking lot and was two feet wide. It apparently in the past had been utilized as a base for a signpost. The pickup's differential struck the cement block, which, according to Reuben, caused the pickup to "jump up enough so it was hanging on top" of the block. The sudden impact caused Evelyn to strike her head on the windshield. Reuben claimed that the block, "grayish-white" in color, had "blended in" with the snow cover and that he did not see it. The pickup was pulled off the cement block by another vehicle.

Immediately following the accident, Evelyn experienced blurred vision, dizziness, and pain in the neck, head, and lower back. She was admitted to a local hospital for x-rays and observation, and treated by Dr. Edward Hagan, a family practitioner. Dr. Hagan found in examining Evelyn mild cervical "tenderness in the muscles along ... each side of the vertebral column." X-rays revealed a mild arthritic growth on "several of the end plates of the lumbar vertebral bodies" which Dr. Hagan testified resulted from the aging process and not the collision. Evelyn was discharged from the hos-

pital the following day. She was fitted with a cervical collar and given medication for pain and a muscle relaxant. Additional medication and treatment were prescribed on December 11, 1981, when Evelyn returned to Dr. Hagan complaining of headaches and neck pain. Evelyn saw Dr. Hagan for the last time on December 21, 1981, at which time, according to Dr. Hagan, she had apparently improved. Dr. Hagan testified that, from his general experience and examination of Evelyn through December of 1981, he did not "anticipate that she [Evelyn] would have any permanent head injury results and probably not any permanent injuries to the spine."

Evelyn testified that she discontinued taking the medication prescribed by Dr. Hagan because it made her sick to her stomach. On December 31, 1981, Evelyn went to Dr. James Stewart, a chiropractor, complaining of headaches and discomfort. Dr. Stewart testified that his examination of Evelyn revealed that all ranges of motion of her cervical spine were greatly reduced. Evelyn received forty-two chiropractic treatments from Dr. Stewart which provided her with only temporary relief. During September, 1982, Dr. Stewart referred Evelyn to a neurosurgeon, Dr. Arun Patil, who conducted an electromyographic study, described by Dr. Patil as an insertion of needles in the muscles to determine electrical activity of muscles and to determine whether there might be nerve damage. Evelyn found these insertions to be very painful. Dr. Patil concluded from the study that Evelyn had not experienced any nerve damage, but "it was possible that she could have some sprained neck." Treatment prescribed by Dr. Patil included physical therapy and the use of a muscle relaxant, which again provided Evelyn with only temporary relief.

Evelyn was then referred by Dr. Stewart to another neurosurgeon, Dr. Richard Olafson, whom Evelyn saw on November 30, 1982. At that time Evelyn complained of severe neck pain, headache, and left shoulder pain and a feeling that her left arm was not as strong as her right arm. Dr.

Olafson found in examining Evelyn's "neck area that she did have limitation in the flexion, that is the forward movement of the neck, extension of the neck, which is the backward movement of the head and the neck. That right and left lateral bendings, which is turning the head towards the shoulders as well as rotating or turning the head toward the right or left, were limited." Dr. Olafson described Evelyn's headaches as "muscle-contraction-type" headaches, "a muscle tightness contraction, ... in relation to an aggravation of her pre-existing cervical degenerative arthritic disease in relationship to flexion, extension type of process which had occurred in the original accident on December 2, 1981."

Dr. Olafson prescribed a medication called Inderal and a home therapy and exercise program for Evelyn. Evelyn did improve with the therapy. Her symptoms were controlled at the time of the trial because, as she stated, the medication Dr. Olafson prescribed helped control them. Evelyn testified that she had not had a headache since November 30, 1982. Dr. Olafson testified that Evelyn "probably had some degree of aggravation of her cervical osteoarthritic degenerative disease of aging and that [she] may have further difficulty with this in the future, but with the appropriate treatment hopefully this can be controlled."

Dr. Stewart examined Evelyn again just prior to trial on March 23, 1984. Dr. Stewart testified that Evelyn's range of motion was still reduced: "lateral bending of the head ... was still reduced by approximately 50 percent. Flexion movement, flexion and extension, ... is reduced approximately 25 percent."

At the time of trial, Evelyn was 56 years old. Prior to December 2, 1981, Evelyn assisted Reuben in several of the duties regarding the operation of their farming business, as well as maintaining the family household and yard. Evelyn attempted to haul grain during August, 1983, but discontinued after one day because driving the truck caused her discomfort in her neck and back. Evelyn testified that she tires very easily. She can no longer mow the lawn, keep a garden, paint the house, engage in many church activities that she had in the past, dance as she and Reuben had done frequently in the past, or lift her three-year-old grandson. She experiences shoulder pain when riding in a car. She testified that although she can still do light housekeeping, her daughter now comes in on weekends to help.

Evelyn alleged in her complaint that Albers was negligent in allowing the unmarked cement obstruction to remain on its premises. In its answer Albers generally denied any negligence on its part, alleging that any damages sustained by Evelyn were caused or contributed by acts of others over whom Albers had no control. Albers filed a third-party complaint against Reuben, alleging that the damages claimed by Evelyn were the result of Reuben's negligence in failing to exercise due care, control, and a proper lookout while operating the pickup. Evelyn cross-claimed against Reuben, alleging that if her injuries were not the result of Albers' negligence, they resulted from Reuben's negligence. In his answer to the third-party complaint and reply to Evelyn's cross-claim, Reuben denied these allegations, alleging as affirmative defenses that Evelyn's damages were the result of an unavoidable accident, Albers' negligence, or negligence on the part of third parties over whom Reuben had no control.

At the conclusion of the trial the jury determined by special verdict that Albers was 100 percent negligent and that Evelyn and Reuben were not negligent, and awarded Evelyn damages in the amount of $61,000. In addition to the damages awarded by the jury the judgment of the court as amended included an award of costs and disbursements in the amount of $982.15 to Evelyn and $229.65 to Reuben.

Albers brought a motion pursuant to Rule 59, N.D.R.Civ.P., requesting that the district court vacate the jury's verdict and grant a new trial. The motion was denied. Albers has raised on appeal the same issues it raised in conjunction with its motion

for a new trial. Thus, the following issues essentially constitute a challenge by Albers to the propriety of the trial court's denial of its motion for a new trial:

"I. Did the District Court err in allowing evidence to be presented at trial concerning other accident or other near accidents involving the cement sign post?

"II. Did the District Court err in allowing witness Craig Oksol to testify about facts surrounding the accident after he had initially been a member of the jury panel and had talked to other members of the jury panel?

"III. Do comments during rebuttal closing argument of Plaintiff's counsel entitle the Defendant to a new trial?

"IV. Is the jury verdict excessive?"

■■■ The decision to grant or deny a new trial rests within the sound discretion of the trial court and will not be set aside on appeal unless there is an affirmative showing of a manifest abuse of discretion. An abuse of discretion by a trial court in granting or denying a motion for a new trial is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the court. *Kraft v. Kraft*, 366 N.W.2d 450, 453 (N.D.1985); *Roberts v. Hail Unlimited*, 358 N.W.2d 776, 780 (N.D. 1984); *Mauch v. Manufacturers Sales & Service, Inc.*, 345 N.W.2d 338, 342 (N.D. 1984).

## I

Two witnesses, one an employee and the other a past employee of a business located next to Albers' store, were permitted to testify as to their personal observation of other incidents involving motor vehicles and the cement block located on Albers' parking lot. Rebecca Eischelman testified that she had seen other vehicles on more than one occasion prior to December 2, 1981, run into the cement block, and could recall one instance in which a woman driving a rather large automobile backed out onto the top of the cement block in such a manner as to restrain any further move-

ment of her vehicle. There was no snow on the ground at that time.

Craig Oksol testified that he had seen other vehicles on several occasions between May, 1977, and December 2, 1981, run into the cement block. Oksol described a "near miss" incident involving the driver of a four-wheel-drive pickup who drove over the top of the cement block but cleared it. There was snow on the ground at that time.

The trial court in admitting over Albers' objection the testimony of Eischelman and Oksol suggested to Albers' counsel that he reveal to the jury through his cross-examination of these witnesses the differences in circumstances involved between the prior incidents and the December 2, 1981, collision.

Albers contends that the trial court erred in admitting the testimony regarding these prior incidents absent a showing of a substantial similarity in terms of time, lighting, weather, and traffic conditions between the prior incidents and the Holtes' collision. Evelyn argues that this testimony was highly relevant because it reveals that even in good weather the cement block was difficult to see and was a dangerous object.

In *South v. National Railroad Passenger Corporation (AMTRAK)*, 290 N.W.2d 819, 828–29 (N.D.1980), we held that the trial court did not abuse its discretion in admitting the testimony of three witnesses regarding prior "near accidents" at a certain railroad crossing where the plaintiff was seriously injured in a collision between the pickup truck he was driving and a train. We stated the majority rule to be that testimony of prior accidents is admissible to show, among certain other things, that a dangerous situation or condition exists, providing that the facts of the prior accidents are substantially similar to those of the accident involved in the lawsuit. *See also* Annot., 21 A.L.R. 4th 472 (1983). We extended the majority view in *South* to include the admission of prior "near accidents." 290 N.W.2d at 298.

■ We have carefully reviewed in this case the testimony regarding prior incidents involving the cement block. Some of the circumstances in regard to those incidents are different from those existing at the time of the Holtes' collision. Nevertheless, because the law requires a substantial similarity and not exact duplication of facts between the proffered evidence and the accident involved in the lawsuit, we conclude that the trial court did not abuse its discretion by admitting such evidence or by denying Albers' motion for a new trial on this issue. The differences in circumstances were matters which affected the weight and not the admissibility of the evidence. *South,* 290 N.W.2d at 829, citing *Young v. Wlazik,* 262 N.W.2d 300, 310 (Minn.1977).

II

Albers next contends that Craig Oksol was a "tainted" witness. Oksol, a prospective juror, was dismissed from serving as a juror because of his personal knowledge of the accident. Albers' counsel made it known to the court, out of the presence of the jury prior to Oksol's testimony, his concern as to the possibility that Oksol may have discussed the case with members of the jury. The trial court immediately investigated the matter by examining Oksol, who indicated that he had mentioned the case to another prospective juror. That person was not seated as a member of the trial jury as the result of a preemptory challenge. Oksol indicated that the prospective juror had asked him if he knew what the case involved and that he had responded that it involved "a vehicle hitting an abutment over at Albers." The prospective juror had also inquired of Oksol whether he thought "they're guilty," to which Oksol responded, "Well, we'll have to let the Court decide that." Oksol indicated that the conversation was "a soft talk" and that "there were people talking all around us."

Albers further asserts that Oksol's testimony was given undue weight and emphasis as the result of the following comment allegedly made by the trial court in reference to Oksol during the jury *voir dire:* "Perhaps you're the best witness in the crowd." The *voir dire* was apparently not recorded. The following is a brief discussion had by the parties' counsel and the trial court concerning the matter:

"MR. PETERSON: Well, there was a statement, 'Perhaps you're the best witness in the crowd.' and that was after the panel was seated.

"THE COURT: Oh, I did say that, didn't I?

"MR. PETERSON: Uh-huh.

"MR. WHISENAND: No, all he said was—

"MR. WHISENAND: Well, he said he couldn't be a juror because he was apt to be a witness.

"THE COURT: No, the comment I made was he couldn't because he might be a witness. But that would be a witness in the jury room was what that remark was meant to be, which would be entirely wrong, of course."

Oksol was allowed to testify over the objection of Albers' counsel.

■ It is generally held that a mere communication between a witness and a juror in a civil action is not a ground for setting aside the verdict or granting a new trial in the absence of a showing that the juror was influenced by such communication to the prejudice of one of the parties to the action. *City of Pleasant Hill v. First Baptist Church of Pleasant Hill,* 1 Cal. App.3d 384, 82 Cal.Rptr. 1, 31 (1969); Annot., 52 A.L.R.2d 182 (1957). We note that the record does not include any evidence that extraneous prejudicial information actually was improperly brought to the jury's attention or that any outside influence was improperly brought to bear upon any juror. In view of the fact that the trial court, after considering the facts and hearing the arguments thereon, determined that no prejudice resulted from the alleged improper communication and comment, we conclude that the trial court did not abuse its discretion in denying Albers' motion for a new trial on this issue.

### III

Albers also contends that the trial court erred in refusing to grant a mistrial in response to the following remarks made by Evelyn's counsel in rebuttal during his closing argument to the jury:

"When we started this lawsuit, and during opening argument, there was some—the defense attorneys made some comments about that Evelyn had put in a claim against Reuben, and I wanted to comment about that. I haven't been practicing law that long, five years, and I think in this particular case I made a mistake. And I hope that not one of you would hold that against my client because I did put in that claim. They know why I did it, and they know I can't tell you why, but I hope that not one of you would come back without a verdict simply because I did that."

These remarks are better understood in their contextual relation to earlier trial testimony and remarks made by Albers' counsel in closing argument. During trial, Evelyn was asked several questions by her counsel regarding her cross-claim filed against Reuben. Evelyn indicated that she did not tell her counsel to sue Reuben, that the accident was not Reuben's fault, and that she had relied on her counsel to do what was necessary. Albers' counsel followed a similar line of questioning in his cross-examination of Evelyn, and made the following remarks in his closing argument:

"[M]ake no mistake about it, there's a lawsuit between Mrs. Holte and her husband. Now, that's kind of an uncomfortable, unusual situation. But that's—that's the way it is. She's asking money damages from her husband. Now, it's one thing to sit on the stand and say, 'I don't understand,' and maybe she really doesn't. But she's turned this case over to a competent lawyer, and she believes in what he's told her to do."

Albers made no objection nor did it request the trial court to caution the jury as to the alleged misconduct. After closing arguments and out of the presence of the jury, Albers moved for a mistrial on grounds that Evelyn's counsel by his remarks improperly informed the jury that Evelyn was not bound by her pleadings and that these remarks were designed to appeal to the sympathy and passion of the jury. The motion was denied.

▆ The determination to grant or deny a new trial by reason of the misconduct of counsel rests within the sound discretion of the trial court, and in the absence of a clear abuse of discretion, its determination will not be reversed on appeal. *South*, 290 N.W.2d at 840; *Kresel v. Giese*, 231 N.W.2d 780, 790 (N.D.1975); *Hogan v. Knoop*, 191 N.W.2d 263, 272 (N.D. 1971). The granting of a mistrial is an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings of the trial which makes it evident that further proceedings would be productive of manifest injustice. *Kresel*, 231 N.W.2d at 790; *Thornburg v. Perleberg*, 158 N.W.2d 188, 191 (N.D.1968); *Hoffer v. Burd*, 78 N.D. 278, 49 N.W.2d 282, 292 (1951).

▆ Though we agree with Albers' contention that argument by counsel must be confined to facts in evidence and the proper inferences which flow therefrom [*Allen v. Kleven*, 306 N.W.2d 629, 635 (N.D.1981) ], we do not agree that the comment complained of here was prejudicial. We reach this conclusion especially in light of the curative nature of the following instruction given by the court to the jury.

### "COMMENTS BY COUNSEL AND JUDGE

"An attorney is an officer of the Court. It is his duty to present evidence on behalf of his client, to make such objections as he deems proper, and to argue fully his client's cause. However, the comments, statements, arguments, or other remarks of an attorney, are not to be considered as evidence in this case.

"If counsel or I make any remarks concerning the *evidence* which you find are not warranted by the evidence, you should wholly disregard them and rely

upon your own recollection or observation. If counsel make any remarks as to the *law* which are not warranted by these instructions, you should wholly disregard such remarks."

The jury was also instructed that "[w]hat is said in closing argument is not evidence."

Having considered the nature of counsel's statement to the jury, its probable effect on the jury in the context of the entire trial, and the court's instructions to the jury, we conclude that the trial court's denial of the motion for a mistrial and subsequent denial of a new trial on these same grounds did not constitute an abuse of discretion. *Kresel,* 231 N.W.2d at 790.

## IV

Albers contends:

"The jury's verdict here is clearly excessive. It may be directly attributable to counsel's improper remarks. Of significance, the jury returned a verdict which coincided with the prayer for relief, further evidencing that the jury was swayed by passion and prejudice and disregarded the evidence.

"A review of the medical testimony indicates that there is no permanancy [sic] to any of Evelyn's complaints and that she had recovered."

A trial court may grant a new trial where it appears that excessive damages have been given under the influence of passion or prejudice. Rule 59(b)(5), N.D.R. Civ.P. The trial court may also grant a new trial if the evidence is insufficient to justify the verdict. Rule 59(b)(6), N.D.R. Civ.P. Albers asserted both these grounds in its motion for a new trial.

In determining the sufficiency of the evidence to support the jury's award of damages, we view the evidence in the light most favorable to the verdict. Our review is limited to a consideration of whether or not there is substantial evidence to sustain the verdict. *Roberts,* 358 N.W.2d at 780.

We find from viewing the evidence in the light most favorable to the verdict that the jury could reasonably have found that as a result of the accident Evelyn sustained a long-term, if not permanent, partial disability or reduction in the motion of her cervical spine, and experienced severe headaches and pain in the neck and back. She tires very easily and experiences discomfort when engaged in activity requiring significant movement. The jury could have reasonably concluded that her injuries from the collision with the cement block aggravated her previously existing arthritic condition to such an extent that she can no longer participate as she was accustomed to doing in the farm work, house work, and yard work, and that her social and family life is also now consequently restricted.

We said in *Cook v. Stenslie,* 251 N.W.2d 393, 397 (N.D.1977),

"that, as in any personal injury case where excessive damages are alleged, no precise limit can be placed on the amount of damages recoverable. Human pain and suffering cannot be measured by a fixed formula, and are best left to the judgment and sound discretion of the jury. In appraising such verdicts, courts must be guided by the peculiar circumstances of each case."

We conclude that there was substantial evidence presented at trial to sustain the jury's award of damages. The trial court did not abuse its discretion in denying Albers' motion for a new trial on this issue. Nor did the trial court abuse its discretion in denying Albers' motion for a new trial on the ground that excessive damages were given under the influence of passion and prejudice. Viewing the evidence in the light most favorable to the verdict, we conclude it is not excessive nor was it actuated by passion and prejudice. *See Roberts,* 358 N.W.2d at 781; *Jim's Hot Shot Service, Inc. v. Continental Western Insurance Company,* 353 N.W.2d 279, 281–82 (N.D. 1984); *Skjonsby v. Ness,* 221 N.W.2d 70, 76–77 (N.D.1974); *Julson v. Loyal Order of Moose Number 822,* 140 N.W.2d 39, 45–46 (N.D.1966).

In conclusion, we find nothing unreasonable, arbitrary, or unconscionable about the

trial court's denial of Albers' motion for a new trial. Accordingly, we affirm the judgment.

GIERKE, VANDE WALLE and LEVINE, JJ., and PEDERSON, Surrogate Justice, concur.

PEDERSON, Surrogate Justice, sitting in place of MESCHKE, J., disqualified.