STATE of North Dakota, Plaintiff
and Appellee,

v.

Garold B. KRAFT, Defendant
and Appellant.

Crim. No. 1213.

Supreme Court of North Dakota.

Sept. 29, 1987.

Patricia L. Burke, State's Atty., Bismarck, for plaintiff and appellee.

Lundberg, Nodland, Lucas & Schulz, Bismarck, for defendant and appellant; argued by Irvin B. Nodland, Bismarck.

GIERKE, Justice.

Garold B. Kraft (Kraft) appeals from a jury verdict convicting him of theft of property, a class C felony, pursuant to §§ 12.1–23–02(1) and 12.1–23–05(2), N.D.C.C. We vacate the jury verdict and remand for a new trial.

In 1984, Garold Kraft was in the construction business and operated a company doing business as Kraft Construction in Bismarck, North Dakota. As a part of his business, Kraft would contract with customers for the sale and construction of metal buildings. These buildings were sold at specified dimensions with a specific amount of component parts which corre-

sponded with the size of the building required. The component parts consisted of prefabricated metal sheets, bolts, doors, etc., and the number of parts sold by Kraft depended upon the size of building requested by his customers. These parts were not unique or special in any way. In other words, the metal buildings were similar and their component parts interchangeable, a larger size building differing from a smaller one only in the number of metal sheets, bolts, etc. necessary for it to meet the size structure specified by Kraft's customers. In July 1984, Kraft sold two of these metal buildings to one Alvin Anderson (Anderson).

One of the buildings Kraft sold to Anderson consisted of a thirty by forty foot (30' x 40') block building and the metal roofing sheets necessary to cover the complex. The remaining structure was a forty by eighty foot (40' x 80') straight wall steel building which Anderson bought and for which Kraft was paid in full. It is this building, or more specifically some parts thereof, which led to Kraft's prosecution and ultimately his conviction of class C felony theft.

In July 1984, Anderson purchased a metal building from Kraft for "around" $13,200.00. The building's dimensions were forty by eighty feet (40' x 80') with sixteen foot walls. The building was neither constructed nor delivered by Kraft because Anderson could not accept delivery and did not have a foundation or acceptable site prepared for the structure. Instead, the metal building was stored in various places on and about the Kraft Construction property. Much of the metal sheeting and other components were simply left out on Kraft's lot while the overhead doors, walk door, and all of the fasteners, closures and other odds and ends were placed inside Kraft's shop. The metal building remained in these various places until Kraft's trial in 1986.

In June 1985, Duane Vetter (Vetter), manager of a local body shop in Bismarck, contacted Kraft because Vetter was looking for some replacement metal sheeting for a building that had been purchased from a salvage dealer. The metal building that had been purchased by Vetter was short of roof sheeting and he contacted Kraft about possibly purchasing some metal roofing sheets from Kraft Construction. Kraft then sold to Vetter thirty-six (36) roofing sheets from the component parts of the building Kraft had previously sold to Anderson.

Importantly, up to the time of trial, Anderson had never asked Kraft for delivery of the building and the record reveals that even after Kraft sold the sheeting to Vetter, had Anderson requested delivery of the building, the metal roofing sheets remained on hand as part of Kraft's inventory or Kraft could have obtained them by the time Anderson's building was to be completed. During the fall of 1985, after Kraft's transaction with Vetter, Anderson testified that he asked Kraft if the metal building was still there because the pile of metal representative of the building Anderson purchased from Kraft looked "awfully small for a whole building." Kraft assured Anderson that the building was complete. Anderson did not ask that his building be delivered or assembled at that time. The metal building remained on the Kraft Construction property, strewn about both Kraft's shop and grounds, until the district court ordered Kraft to deliver the building to Anderson after the trial.

During the spring of 1986, while investigating a separate crime involving a metal building, officers of the Bismarck Police Department became aware of the transaction between Vetter and Kraft involving the sale of the thirty-six (36) metal roofing sheets from the building Anderson purchased in 1984. The police confronted Kraft about this transaction and Kraft freely admitted that he sold the sheeting to Vetter. Kraft added, however, that he could complete Anderson's building any time that Anderson requested it to be erected. The police then informed Anderson about the transaction between Kraft and Vetter. On March 20, 1986, Kraft was arrested for theft of property.

Prior to trial, Kraft selected eleven (11) standard jury instructions from the North

Dakota Criminal Jury Instructions and requested that they be given to the jury by the court. Further, Kraft requested a special jury instruction for the meaning of "deprive" as it is defined under Section 12.1–23–10(3)(c) of the North Dakota Century Code. At the trial, the court instructed the jury in accordance with the eleven standard jury instructions and the one special instruction as requested by Kraft. Kraft was tried by jury on July 22, 1986, and was convicted of a class C felony. Kraft filed a motion for acquittal or new trial. At the hearing on the motion for new trial, counsel for Kraft argued in support of the motion on the grounds that there was a defense to the crime charged based on the delivery and acceptance sections of the Uniform Commercial Code.[1] There was no instruction given to the jury by the court nor was there one requested by Kraft on any defense or area of defense based on the delivery and acceptance sections of the Uniform Commercial Code. The motion for new trial was denied by the district court on September 15, 1986. This appeal followed.

Kraft, represented by new counsel, raises three issues on appeal. Initially, Kraft asserts that there was insufficient evidence presented at trial to find him guilty of theft. Additionally, Kraft asserts that the State failed to prove an essential element of the crime and, therefore, he should be acquitted of his theft conviction. Finally, it is Kraft's contention that the trial court erred in denying his motion for acquittal or new trial based upon a "Uniform Commercial Code" defense which supports his assertion that no crime was committed.

Because it is dispositive of this appeal, our review focuses on whether the trial court erred in denying Kraft's motion for a new trial. We believe that the failure by the trial court to include an instruction to the jury on the defense based on the Uniform Commercial Code which went to an essential question of law constituted error that affected substantial rights of the defendant such that it was an abuse of discretion by the trial judge to deny the defendant's motion for a new trial after the omission was brought to the attention of the court.

Rule 30 of the North Dakota Rules of Criminal Procedure[2] provides when and upon what the jury is to be instructed, and

---

1. The Uniform Commercial Code is codified in Title 41 of the North Dakota Century Code. The Uniform Commercial Code sections referred to by counsel for Kraft are Sections 41–01–15(5) (course of dealing and usage of trade), 41–02–26(1) (absent specific time—reasonable), and 41–02–51(1) (seller's tender of delivery), N.D. C.C.

2. Rule 30, N.D.R.Crim.P., provides:
   "(a) Instructions to Jury; Written or Oral. The court shall instruct the jury after the arguments of counsel to the jury are concluded. The court shall instruct the jury only as to the law of the case. The instructions shall be reduced to writing unless the parties otherwise agree. If written instructions are given they shall be signed by the judge and shall be taken by the jurors in their retirement. When oral instructions are given, they must not be taken by the jurors in retirement unless, after they have been transcribed, it is so ordered by the court. All instructions taken by the jurors in retirement shall be returned into court with their verdict.
   "(b) Requested Instructions. At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court may require that each instruction be written on a separate sheet, provided that North Dakota pattern jury instructions may be requested by reference to instruction number only. The court shall inform counsel in writing of its action upon requested instructions prior to their argument to the jury. All instructions given by the court to the jurors must be read or given to them orally by the court without disclosing whether the instructions were requested.
   "(c) Exceptions to Instructions. The giving of instructions and the failure to instruct the jurors shall be deemed excepted to unless the court, before instructing the jurors, shall submit to counsel the written instructions which it proposes to give to the jurors and shall ask for exceptions to be noted, and thereupon counsel must designate the parts or omissions of the instructions as he may deem objectionable. Thereafter, only the parts or omissions so designated shall be excepted to by the counsel designating the same. All proceedings connected with the taking of exceptions must be in the absence of the jurors and a reasonably sufficient time shall be allowed counsel to take exceptions and to note the same in the record of the proceedings."

the methods of doing so. It is the duty of the court to instruct the jury upon questions of law applicable to the case. Rule 30(a), N.D.R.Crim.P.; *see also State v. Reich,* 298 N.W.2d 468, 471 (N.D.1980) (duty of court to correctly advise the jury on the law of the case); *Dranow v. United States,* 307 F.2d 545, 568 (8th Cir.1962) (duty of trial court to instruct the jury on general principles of law applicable to the facts of the case). Although the judge is initially responsible to present jury instructions concerning the issues, attorneys may request specific instructions on points of law in order that the jury may be fully informed as to all the law governing the case. Rule 30(b), *supra; see also State v. Allery,* 322 N.W.2d 228, 232 n. 3 (N.D.1982) ("While the judge is initially responsible to correctly instruct the jury ... the attorneys have the professional responsibility to request or object to specific instructions of points of law resulting from testimony or on developments during trial....").

■ Fundamental in any proceeding finding criminal liability is the idea that one accused of a crime must have possessed a guilty mind as well as performed the proscribed act. *State v. McDowell,* 312 N.W.2d 301, 303 (N.D.1981), *cert. denied,* 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed.2d 294 (1982). While modern statutory law has, to a limited degree, modified the traditional rule requiring a specific intent for every proscribed act (*see McDowell, supra*), it remains an essential element of the crime of theft as defined by Section 12.1-23-02, N.D.C.C.

We note that Kraft was charged with theft in accordance with Section 12.1-23-02(1), N.D.C.C. Section 12.1-23-02(1), N.D. C.C., provides that a person is guilty of theft if he:

"Knowingly takes or exercises unauthorized control over, or makes an unauthorized transfer of an interest in, the property of another *with intent to deprive the owner thereof;*" [Emphasis added.]

Section 12.1-23-10(3)(a-c), N.D.C.C., defines the term "deprive":

"3. 'Deprive' means:

a. To withhold property or to cause it to be withheld either permanently or under such circumstances that a major portion of its economic value, or its use and benefit, has, in fact, been appropriated; or

b. To withhold property or to cause it to be withheld with the intent to restore it only upon the payment of a reward or other compensation; or

c. To dispose of property or use it or transfer any interest in it under circumstances that make its restoration, in fact, unlikely."

Thus, the specific intent required under Section 12.1-23-02(1), N.D.C.C., clearly requires the defendant to take the property of another "... with intent to deprive the owner thereof." Section 12.1-23-02(1), N.D.C.C.

Kraft argues that under applicable Uniform Commercial Code provisions no crime was committed. Kraft asserts that since no specific time of delivery was agreed upon then, under Section 41-02-26(1), N.D. C.C.,[3] he would be entitled to a reasonable time to deliver the building after delivery was requested. Also, Kraft alleges that delivery was tendered but no facility reasonably suited for receipt of the goods was furnished as required under Section 41-02-51(1).[4] Kraft further contends that it is in

**3.** Section 41-02-26(1), N.D.C.C., provides:
"*Absence of specific time provisions—Notice of termination.*
1. The time for shipment or delivery or any other action under a contract if not provided in this chapter or agreed upon shall be a reasonable time."

**4.** Section 41-02-51(1), N.D.C.C., provides:
"*Manner of seller's tender of delivery.*
1. Tender of delivery requires that a seller put and hold conforming goods at the buyer's disposition and give the buyer any notifica-

tion reasonably necessary to enable him to take delivery. The manner, time, and place for tender are determined by the agreement and this chapter, and in particular:
a. Tender must be at a reasonable hour, and if it is of goods they must be kept available for the period reasonably necessary to enable the buyer to take possession; but
b. Unless otherwise agreed the buyer must furnish facilities reasonably suited to the receipt of the goods."

the regular usage of the trade to treat non-unique component parts as inventory to be sold as needed and replaced, therefore, no crime was committed, pursuant to Section 41–01–15(5), N.D.C.C.[5] Accordingly, any defense or area of defense based on the delivery and acceptance sections of the Uniform Commercial Code pertains to the element of intent which is essential for the crime of theft of property under Section 12.1–23–02(1), N.D.C.C.

■ In this instance the record reveals that the trial court provided certain standard instructions to the jury on the law of the case. However, no specific instruction was given on the law as to any defense or area of defense based on the delivery and acceptance sections of the Uniform Commercial Code. In addition, counsel neither requested a specific instruction on the defense based on the Uniform Commercial Code nor objected to the absence of such an instruction. In the interest of a fair trial, such an instruction should have been given by the court and the failure to give such an instruction in this case was error.

■ Rule 52 of the North Dakota Rules of Criminal Procedure provides:

"*(a) Harmless Error.* Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.

"*(b) Obvious Error.* Obvious errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Even though the general rule is that an issue will not be noticed unless raised at trial, an error that infringes upon substantial rights of the defendant is noticeable notwithstanding lack of an objection or, as in this case, in the absence of a request for an instruction. *See* Rule 52(b), *supra; see also State v. Miller,* 388 N.W.2d 522, 522 (N.D.1986) (obvious error is an exception to the general rule that issues not raised at trial will not be addressed on appeal).

■ The power to notice obvious error is exercised cautiously and only in exceptional circumstances where the defendant has suffered a serious injustice. *State v. Janda,* 397 N.W.2d 59, 70 (N.D.1986); Explanatory Note to Rule 52, N.D.R.Crim.P.; *see also State v. Johnson,* 379 N.W.2d 291, 293 (N.D.), *cert. denied,* 475 U.S. 1141, 106 S.Ct. 1792, 90 L.Ed.2d 337 (1986). In assessing the possibility of error concerning substantial rights under Rule 52(b), it is necessary to examine the entire record and the probable effect of the actions alleged to be error in light of all the evidence. *Johnson, supra.* Furthermore, Rule 52 applies to both the trial court and the appellate court. Explanatory Note to Rule 52, *supra.*

In *Tatum v. United States,* 190 F.2d 612, 615 (D.C.Cir.1951), *cert. denied,* 356 U.S. 943, 78 S.Ct. 788, 2 L.Ed.2d 818 (1958), quoting *Kreiner v. United States,* 11 F.2d 722, 731 (2d Cir.1926), the District of Columbia Court of Appeals stated that the "[f]ailure on the part of a trial court in a criminal case to 'instruct on all essential questions of law involved in the case, whether requested or not' " would clearly affect substantial rights within the meaning of Rule 52(b) of the Federal Rules of Criminal Procedure.[6] It was further stated that "in criminal cases the defendant is entitled to have presented instructions relating to a theory of defense for which there is any foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent or of doubtful credibility." *Tatum, supra,* at 617 (citing 53 Am.Jur., Trial § 580); *State v. Thiel,* 411 N.W.2d 66 (N.D.1987); *see also* 75 Am. Jur.2d, Trial §§ 575, 652 (1974).

In this instance, the trial court could take notice of the omission of an instruction to the jury on a defense based on the Uniform

---

5. Section 41–01–15, N.D.C.C., provides in part: "*Course of dealing and usage of trade.*

＊　　＊　　＊　　＊　　＊　　＊

5. An applicable usage of trade in the place where any part of performance is to occur shall be used in interpreting the agreement as to that part of the performance."

6. Rule 52, N.D.R.Crim.P., "differs from the Federal Rule only in the substitution of the word 'obvious' error for 'plain' error." Explanatory Note to Rule 52, N.D.R.Crim.P.

Commercial Code because it affected a substantial right of the defendant. In *State v. Janda, supra,* we stated that in cases of non-constitutional error in failing to instruct where there was no objection, our task is to determine whether the error had a significant impact upon the verdict. After reviewing the record, we conclude that the error in not giving an instruction to the jury as to the defense or area of defense based on the Uniform Commercial Code had a significant impact upon the verdict and, therefore, constituted obvious error.

■ Under Rule 33 of the North Dakota Rules of Criminal Procedure,[7] the court may grant a new trial to the defendant if required in the interest of justice. A motion for a new trial is committed to the sound discretion of the trial court and its judgment is conclusive unless we can say that, in denying the motion, there was an abuse of discretion. *State v. Kringstad,* 353 N.W.2d 302, 307 (N.D.1984) (citing *State v. Dilger,* 338 N.W.2d 87, 97 (N.D. 1983)). An abuse of discretion has been defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Johnson, supra,* at 294 (citing *State v. Knoefler,* 325 N.W.2d 192, 195 (N.D.1982)); *State v. Schimetz,* 328 N.W.2d 808, 811 (N.D.1982). Also, this Court has frequently held that a stronger showing of abuse is required to reverse an order granting a new trial than to reverse an order denying a motion for a new trial. *State v. Oasheim,* 353 N.W.2d 291, 293 (N.D.1984).

In this instance, Kraft made, pursuant to Rule 33, N.D.R.Crim.P., a motion for new trial. At the hearing on the motion for new trial, Kraft's counsel supported the motion arguing that there was a defense to the crime charged based on the delivery and acceptance sections of the Uniform Commercial Code. Nevertheless, the trial court denied the motion for new trial. The omission of an instruction to the jury on a defense which went to an essential question of law applicable to the facts of the case affected a substantial right Kraft had in presenting a pertinent defense to the jury. Thus, we believe that the trial court should have granted Kraft's motion for a new trial.

Accordingly, we conclude the trial court abused its discretion in denying Kraft a new trial. Therefore, we reverse Kraft's conviction and remand for a new trial.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

---

7. Rule 33(a), N.D.R.Crim.P., provides:

"*(a) Grounds for Motion.* The court on motion of a defendant may grant a new trial to him if required in the interests of justice. The motion for a new trial shall point out with particularity the defects and errors complained of."