STATE of North Dakota, Plaintiff and Appellee

v.

Gregory C. KAISER, Defendant and Appellant.

Crim. No. 870057.

Supreme Court of North Dakota.

Dec. 29, 1987.

C. Charles Chinquist, Fargo, for defendant and appellant.

Robert Garold Hoy, State's Atty., Fargo, for plaintiff and appellee.

GIERKE, Justice.

Gregory C. Kaiser (Kaiser) appeals from a jury verdict convicting him of terrorizing, a class C felony, in violation of Section 12.1–17–04, N.D.C.C. We affirm.

Kaiser was charged with two offenses, terrorizing in violation of Section 12.1–17–04, N.D.C.C., and theft of property in violation of Section 12.1–23–02, N.D.C.C. A jury trial was held on December 18 and 19, 1986. The jury returned verdicts finding Kaiser "guilty" of terrorizing and "not guilty" of theft of property.

The facts of the terrorizing charge came from the testimony of both a complaining witness, Kim Bossart (Bossart), and the defendant, Kaiser. Bossart testified that on May 31, 1986, Kaiser phoned her following a disagreement they had earlier that evening and wanted to get together to talk things over. Bossart agreed to meet Kaiser. Bossart's testimony continues that Kaiser picked her up and drove her out to a remote gravel road south of West Fargo. Bossart stated that Kaiser held a knife to her throat and made verbal threats to her.[1] Bossart further testified that only by verbally patronizing Kaiser was she able to talk him out of harming her. Kaiser testified that they did have a disagreement on the evening of May 31, 1986. Kaiser further testified that later that evening he drove over and picked Bossart up at her home. However, Kaiser stated that they

just drove around in West Fargo while they talked. Kaiser denied that he threatened Bossart or held a knife to her. Thus, Kaiser denied that the knife incident occurred.

During closing argument, the prosecutor made several comments that were objected to by defense counsel. The text of the prosecutor's final argument that contains two of the remarks objected to by defense counsel is as follows:

"Well, ladies and gentlemen of the jury, I would like to suggest to you that she's finally done that. She's got up the courage to call the cops. She's got up the courage to defy Greg Kaiser. She's mustered the courage to tell what happened on June 1st.

"She told the police. Criminal Complaint filed. This trial is the result. She placed her trust in the criminal justice system to—as she put it, 'I needed to know I would have protection from Greg.'

"She's been told that the criminal justice system can provide that. She's trusted us, ladies and gentlemen. And whether you want to or not, you are part of the system now. A very important part of this system.

"She's trusted you to help her, to protect her, and to do justice. That's what we're here for. You, as this jury, drawn from all parts of the county, all walks of life, all different backgrounds, all different experiences, sit here as the conscience of the community, to render justice in this particular case."

At this point, defense counsel objected to the prosecutor's statements that Bossart placed her trust in the jury and that the jury is the conscience of the community. The objection was noted by the trial judge. The final argument of the prosecutor continued as follows:

"It is our job, ladies and gentlemen, to render justice in criminal cases such as this. Cases like this, committed in the dark of the night, rural areas, two peo-

---

1. Bossart testified that while Kaiser was standing behind her with the point of the knife against her throat he made the following threats:

"Who's going to help you now? Your friends aren't here and your parents aren't here.
"You don't think I'll do it.
"Your friends are going to find you dead."

ple, one much larger than the other, one armed and one unarmed, can have any number of results.

"Kim Bossart was able to keep her wits about her and talk her way out of it. She was terrorized, nonetheless. And I think that you will find from your review of the evidence and your review of the law that the Court will give you that the State has proven beyond any reasonable doubt the essential elements of that crime.

"I think you will also find, beyond a reasonable doubt, that the State has also proven beyond any doubt that the defendant, Greg Kaiser, also stole her ring. Crimes like holding weapons, knives to people's throats and threatening or threatening to kill them are very serious.

"When you stop and think about it, she had no control at that point over whether she was going to live or die. Her very life hung in the balance of what Greg Kaiser wanted to do. Does he or doesn't he do it? She has lost control.

"Ladies and gentlemen of the jury, I suggest to you now that this type of physical violence, of domestic-relations-type relationship, cannot go on. It is better that we treat or deal with cases like that and matters like this, where we still have a victim that is alive and able to tell us about it, than it is to have to wait until we come in here and tell you that Kim Bossart's body was found on this rural road, stabbed and beaten."

Defense counsel objected to the prosecutor's remark about the body. Defense counsel asserted that the statement was highly prejudicial. In response to the ob-

jection, the trial judge stated, "very well." Defense counsel sought a mistrial based upon the allegedly improper statements made by the prosecutor during his closing argument. The trial court denied Kaiser's motion for a mistrial. In denying the motion for mistrial, the trial court found the prosecutor's argument about the body to be improper but, deemed it not to be reversible.[2]

Defense counsel then brought a motion for a new trial pursuant to Rule 33, N.D.R. Crim.P., and predicated upon the allegedly improper statements made by the prosecutor during the course of his closing argument. On January 30, 1987, the trial court issued a Memorandum Opinion and Order denying the motion for new trial. The trial court's reasoning in denying the motion for new trial is summarized in the final paragraph of the Memorandum Opinion as follows:

"In determining whether the interests of justice require a new trial, the Court must consider the closing argument as a whole. The statements made by Mr. Hoy were in the context of his presentation of the evidence. Although the statement referring to waiting until the victim's body was brought into Court is improper argument, it did not preclude Defendant from receiving a fair trial. The jury was instructed that statements of counsel are not evidence. The Court in its discretion finds that the Defendant was not denied a fair trial as a result of these statements. When considered in the context of the entire argument by Mr. Hoy, they were not intended to inflame or prejudice the jury."[3]

2. In denying the motion for mistrial, the trial court ruled as follows:

"Well, the main argument that counsel has —that the Court is somewhat concerned with is the argument about the body. The Court finds that argument to be improper.

"However, given the circumstances in this case and the inability at this point in time for the Court to adequately correct any impression it may make upon the jury and the fact that the Court deems it not to be reversible, the Court denies the motion for new trial."

3. The following instruction was referred to by the court in the Memorandum Opinion:

"STATEMENTS BY COUNSEL AND JUDGE

"An attorney is an officer of the Court. It is his duty to present evidence on behalf of his client, to make objections he considers proper, and to argue fully his client's cause. However, the argument or other remarks of an attorney, except admissions and stipulations noted in the course of the trial, must not be considered by you as evidence.

"If counsel or I have made any comments or statements concerning the *evidence* which you find are not warranted by the evidence, you should wholly disregard them and rely upon your own recollection or observation.

Thus, the trial court, after considering the closing argument as a whole, reasoned that Kaiser was not denied a fair trial as a result of the statements. This appeal followed.

On appeal, Kaiser asserts that the trial court abused its discretion in denying his motions for a mistrial and for a new trial.

■ The determination to grant or deny a new trial by reason of the misconduct of counsel rests within the sound discretion of the trial court, and in the absence of a clear abuse of discretion, the trial court's determination will not be reversed on appeal. *State v. Kraft*, 413 N.W.2d 303, 308 (N.D. 1987); *Holte v. Carl Albers, Inc.*, 370 N.W. 2d 520, 526 (N.D.1985); *South v. National R.R. Passenger Corp.*, 290 N.W.2d 819, 840 (N.D.1980); *Kresel v. Giese*, 231 N.W.2d 780, 790 (N.D.1975).

■ The granting of a mistrial is an extreme remedy which should be resorted to only when there is a fundamental defect or occurrence in the proceedings that makes it evident that further proceedings would be productive of manifest injustice. *State v. Schimmel*, 409 N.W.2d 335, 340 (N.D.1987); *State v. Carr*, 346 N.W.2d 723, 725 (N.D.1984).

Further, a trial court may, pursuant to Rule 33(a) of the North Dakota Rules of Criminal Procedure, grant a new trial to the defendant if required in the interest of justice. *See also, State v. Kraft*, 413 N.W. 2d 303, 308 (N.D.1987); *State v. Kringstad*, 353 N.W.2d 302, 307 (N.D.1984).

Accordingly, a mistrial should be granted only in the furtherance of justice and, if the trial judge denies a mistrial, that decision will not be reversed unless a manifest injustice appears. *State v. Schimmel, supra; State v. Abrahamson*, 328 N.W.2d 213, 219 (N.D.1982); *State v. Tjaden*, 69 N.W.2d 272, 278 (N.D.1955). Also, a motion for new trial is committed to the sound discretion of the trial court and its judg-

ment is conclusive absent an abuse of discretion. *Holte v. Carl Albers, Inc., supra; State v. Dilger*, 338 N.W.2d 87, 97 (N.D. 1983); *State v. McLain*, 312 N.W.2d 343 (N.D.1981). Thus, motions for mistrials and motions for new trials are directed to the discretion of the trial court and absent a clear abuse of discretion or a manifest injustice its determination will not be reversed. In the instant case, counsel for Kaiser objected to several statements made by the prosecutor during closing argument. The substance of the allegedly improper statements made by the prosecutor is as follows:

(1) Statements to the jury that Kim Bossart had placed her trust in the jury.

(2) Statements to the jury that they had been drawn from all parts of Cass County and that they were the conscience of the community.

(3) Statements to the jury to the effect that, "[D]o we need to wait until Kim Bossart's body is brought into court?"

■ Argument by counsel must be confined to facts in evidence and the proper inferences that flow therefrom. *Holte v. Carl Albers, Inc., supra; Allen v. Kleven*, 306 N.W.2d 629, 635 (N.D.1981). Remarks by counsel that are made for the purpose of arousing sympathy or prejudice are improper and counsel must refrain from such action. *Andrews v. O'Hearn*, 387 N.W.2d 716, 731 (N.D.1986); *Smith v. Riedienger*, 95 N.W.2d 65, 72 (N.D.1959).

Kaiser contends that the prosecutor's closing argument injected a civic duty obligation which implied that the jury should convict out of sympathy to the victim. Further, Kaiser asserts that the prosecutor's argument went beyond the evidence presented and the logical inferences drawn therefrom. We disagree.

■ We believe that the remarks made by the prosecutor during closing argument were not injected to incite a civic duty

"If counsel have made any statements as to the *law* which are not warranted by these instructions, you should wholly disregard those statements." (Emphasis in original.)
The jury was also instructed as follows:
STATEMENTS OF COUNSEL

"The opening statement and closing arguments of counsel are intended to help you in understanding the evidence, applying the law, and in determining the facts, but they are not evidence."

obligation. The statements did not imply that the jury should convict out of sympathy to the victim. Furthermore, we do not believe that the prosecutor's argument went beyond the reasonable inferences that could have been drawn from the facts in evidence. Thus, after considering the nature of the prosecutor's statement to the jury and the probable effect on the jury in the context of the entire trial, we believe that the comments complained of here did not affect the verdict prejudicially or deprive the defendant of a fair trial.

We conclude that the trial court's denial of the motion for a mistrial and subsequent denial of a new trial did not constitute an abuse of discretion. Accordingly, we affirm the judgment.

ERICKSTAD, C.J., and VANDE WALLE, LEVINE and MESCHKE, JJ., concur.

LEVINE, Justice, specially concurring.

In order to convict, the jury had to believe the complainant's testimony and disbelieve defendant. Even so, the complainant's testimony provided substantial evidence for the verdict. Were this not so, I would deem prejudicial the remarks by the prosecutor that the jury should not wait for a body to be brought in. Those remarks improperly and prejudicially diverted the jury's attention from the facts at hand to the situation at large. That a national or local problem exists with regard to domestic violence is everyone's concern. However, the jury was duty-bound to base its verdict only on the facts of this case and not on its fear or concern with a larger societal crisis. By injecting into this case the national case, the prosecutor was off-base and created serious error.

I would not have disagreed with the trial court had it granted a mistrial or new trial. That it did not, under the circumstances of this case, I agree is neither a manifest injustice nor an abuse of discretion. I therefore concur.